Argued October 11, 1974, affirmed in part; reversed in part and remanded April 1, petition for rehearing denied May 13, 1975

# SCHOOL DISTRICT NO. 1, MULTNOMAH COUNTY, OREGON, *Petitioner, v.* NILSEN ET AL, *Respondents-Petitioners.*

### 534 P2d 1135

*Mark C. McClanahan,* Portland, argued the cause for petitioner. With him on the briefs were Bruce E. Speidel, and Miller, Anderson, Nash, Yerke & Wiener, Portland.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondents-petitioners. With him on the briefs were Lee Johnson, Attorney General, and Al J. Laue and Thomas Trotta, Assistant Attorneys General, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, SLOPER, and LEAVY, Justices.

HOLMAN, J.

On the complaint of a probationary female teacher the Commissioner of the Bureau of Labor through the Attorney General filed a proceeding against School District No. 1, Multnomah County, charging it under the Oregon Fair Employment Prac-

tices Law[1] with discrimination on the basis of sex. The Commissioner convened an administrative adjudicative hearing on the merits of the complaint. The hearing culminated with a finding of unlawful discrimination being entered against the District. The District appealed to the Court of Appeals, which affirmed the Commissioner in part and reversed him in part. 17 Or App 601, 523 P2d 1041 (1974). Both the District and the Commissioner requested and were granted review by this court.

The record is voluminous and the contentions of the parties are many and varied. In order to determine the extent of our task, we will first consider the permissible scope of the Commissioner's inquiry under the proceedings filed by the Attorney General.

The Commissioner contends that the Court of Appeals erred in limiting its inquiry to the issues raised by the complaint initially filed by the complaining teacher. A resolution of the problem of determining the scope of the Commissioner's inquiry necessitates an analysis of the nature of the teacher's complaint to the Commissioner, the statutory machinery by which it must be processed, and the scope of the Attorney General's pleadings in this proceeding.

School teachers hired by the District are required to serve three years as probationary teachers before they are given tenure. In September 1970, complainant, a third-year probationary teacher employed by the District, notified the District she was pregnant and was expecting her child to be born in late January or early February of 1971. The District informed her that, in conformance with its rules, she would be

___

[1] ORS ch 659.

required to resign when her pregnancy had advanced to the point where she was no longer able to teach. She so resigned under protest effective Christmas of 1970. Under the District's rules her required resignation would cause her to lose the 2½ years of probationary time she had accumulated toward tenure and, if rehired, she would have to begin anew as a first-year probationary teacher. As a result, she filed a complaint with the Commissioner, charging that she was made the subject of discrimination because of her sex when she was forced to resign instead of being given maternity leave for the remainder of the school year. The Court of Appeals held that the extent of the subsequent hearing before the Commissioner was limited solely to the specific issues raised by this complaint. Also see *School Dist. No. 1 v. Nilsen,* 7 Or App 396, 407-08, 490 P2d 1265 (1971), *reversed on other grounds,* 262 Or 559, 499 P2d 1309 (1972), for a similar holding.

Under the appropriate statutes the Commissioner may investigate any complaint filed with him, and if investigation discloses any substantial evidence supporting the allegations in the complaint, he may attempt by conciliation to effect a settlement and to eliminate any unlawful practice.[2] In case of failure to resolve a complaint by conciliation, the Commissioner certifies the record to the Attorney General who prepares specific charges and serves them upon the Commissioner and those who are charged.[3] The Commissioner then sets a hearing upon these formal charges. All of this was done. The Attorney General

---

[2] ORS 659.050(1).

[3] ORS 659.060 which has subsequently been amended by Oregon Laws 1971, ch 418, § 20, and ch 723, § 3.

charged the District with unlawful discrimination, specifying that:

"(1) From on or about September 9, 1968, to and including the present, the Respondent has caused to be printed and circulated and has printed and circulated a publication entitled 'Rules and Regulations — School District No. 1, Multnomah County, Portland, Oregon' and from on or about July 1, 1970, to and including the present the Respondent has caused to be printed and circulated a publication entitled 'Agreement between Board of Education, School District No. 1, Multnomah County and the Portland Association of Teachers.' Said publications contain in part statements in connection with employment which express limitations, specifications and discrimination as to sex.

"(2) Respondent refuses to grant to probationary female teachers, including Mrs. Sally Flury, a third year probationary teacher, an unpaid leave of absence for maternity reasons, and requires all female probationary teachers, including Mrs. Sally Flury, to resign their position and from their employment with said district immediately upon becoming aware of their pregnancy.

"(3) In September 1970, Sally Flury notified Respondent that she was pregnant and expected a child in the latter part of January 1971; and requested that she be given a leave of absence beginning in January 1971 because of such pregnancy. The respondent, upon being advised by Mrs. Sally Flury that she was pregnant demanded that she immediately resign her position as a probationary teacher and resign from her employment with said district, such resignation to be effective at a time to be determined exclusively by said Respondent. Upon the failure and refusal of Mrs. Sally Flury to resign, the Respondent discharged Sally Flury from her position as a probationary teacher and

from her employment with the district solely because of her sex.

"WHEREFORE, Petitioner prays that a hearing be scheduled and that upon the conclusion thereof that the Honorable Norman O. Nilsen, Commissioner of Labor, make such orders as respect the present and future conduct of the Respondent as he deems necessary and reasonably calculated to carry out the purposes of ORS 659.010 to ORS 659.110, to eliminate the effects of any unlawful practice found and protect the rights of Sally Flury and other persons similarly situated."

The District moved to make the first paragraph more definite and certain, but the motion was denied by the hearing officer.

■ It is our opinion that the Court of Appeals was in error in holding that the complaint against the District was limited to the specific charges filed by the complainant with the Commissioner rather than to the charges in the formal complaint filed by the Attorney General on which the matter was heard. A private complainant is not trained or experienced in the filing of complaints nor in the recognition of all of the facets or effects of discrimination, and there is no reason to believe that at the time of the filing of the original complaint by the teacher the Commissioner was familiar with the circumstances. The statutory scheme contemplates a subsequent investigation by the Commissioner followed by attempted conciliation and a referral of the matter, should conciliation efforts fail, to the Attorney General for the filing of a formal complaint upon which a hearing is held. It is not reasonable to assume that the legislature intended to prevent the Attorney General from including in his formal charge other discriminatory practices

found to exist which affect the complainant. It would seem also that the attempted conciliation efforts should be directed toward any discriminatory conduct discovered in the course of the investigation which the teacher had standing to raise. An attempt to conciliate any claimed discriminatory conduct discovered upon investigation would be useless if such conduct could not subsequently be incorporated in the formal charge which follows failure of conciliation.

Such has been the interpretation of the federal Civil Rights Act of 1964, Title VII, 42 USCA § 2000e et seq., which, in this respect, is substantially similar to the Oregon act except that there, after failure of conciliation, the complainant brings a civil action through her own attorney rather than, as is the case here, an administrative hearing before the Commissioner brought by the Attorney General. In discussing this issue, the court in *King v. Georgia Power Company,* 295 F Supp 943, 946-47 (ND Ga 1968) stated:

"* * * It appears that a large number of the charges with EEOC [Equal Employment Opportunity Commission] are filed by ordinary people unschooled in the technicalities of the law. As stated in the brief filed by EEOC: 'To compel the charging party to specifically articulate in a charge filed with the Commission, the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected.' See United States v. Mayton, 355 F 2d 153 at 161 (5th Cir. 1964) (same problem in a similar context).

'The correct rule is that the complaint in the civil action is confined to those issues the orig-

inal complaint has standing to raise, but may properly encompass any such discrimination like or reasonably related to the allegations of the charge and growing out of such allegations during the pendency of the case before the Commission.'

This rule, broadly speaking, in effect limits the civil action to that range of issues that would have been the subject matter of the conciliation efforts between EEOC and the employer. If the civil action were not so limited, then the primary emphasis of this Title would be circumvented, i.e., an emphasis upon voluntary settlement of all issues without an action in the District Court. Therefore, it must be emphasized that this Court's holding as to the scope of this action is not based on analogies to NLRB proceedings nor to any deference to the expertise of the Commission but is based on the inherent logic of the stated rule within the statutory scheme heretofore described.  *  *  *. It should be emphasized that the EEOC is not free to manipulate the scope of a case beyond the bounds herein expressed. The expansion of a particular charge is limited to the issues that a particular complainant has standing to raise, as become evident from the Court's discussion of the class aspects of this case.  *  *  *." (Footnote omitted.)

Thus, the only limitations placed on the specific charges entered by the Attorney General are:

(a)  the complainant must have had standing in the first instance to raise the issues which are first given explicit expression by the Attorney General; and

(b)  the issues so raised may encompass discrimination only like or reasonably related to the allegations in the individual's complaint to the Commissioner. See *King v. Georgia Power Company*, 295 F Supp 943, 946-47 (ND Ga 1968).

■ However, since it is our opinion that the formal complaint filed by the Attorney General was no broader than that filed by the complaining probationary teacher, a holding that the formal complaint filed by the Attorney General is not limited to the charges in the complaint initially filed by the individual complainant avails the Commissioner little in the present case. There are no reasons for not construing the formal complaint filed by the Attorney General, after investigation by the Commissioner, the same as any other pleading. At some time the alleged transgressor is entitled to be specifically informed of that with which he is charged. A perusal of the formal complaint in this case discloses that the District is charged with requiring pregnant probationary teachers to resign instead of permitting them to take maternity leave. It does not encompass any charge concerning whether complainant is entitled to sick pay while absent from work because of pregnancy or any contention that had maternity leave been granted, she would not have been permitted to return to work until the beginning of the next school year. Such issues, together with others not within the formal charge, were thus impermissibly encompassed within the Commissioner's disposition.

In the first paragraph of the formal complaint there is some general language about discriminatory regulations of the District, but there are no allegations which indicate that these general references concern anything other than the specific charges of discrimination alleged in the ensuing paragraphs. As stated earlier, the District, in an excess of caution, moved to make the first paragraph more definite and certain to determine if it had any particular significance other

than the specific charges which followed, and its motion was denied. Under these circumstances such general references added nothing to the complaint.

■ We are aware that the proceedings are governed by the Administrative Procedures Act;[4] nevertheless, we do not believe the interpretation of pleadings under that act permits the kind of foraging at large in which the Commissioner has indulged in this case. After an informal complaint by the worker, investigation, an attempt at conciliation and the filing of a formal complaint by the Attorney General, charges should be particularized and the prosecution should not be allowed to fall back upon sweeping generalities.

■ However, it is apparent from the statutes that it was the intention of the legislature that other persons situated similarly to the private complainant could be encompassed within the remedial authority of the Commissioner so that, in this respect, the proceeding is in the nature of a class action although only a specific individual is named as being the subject of discrimination. The provisions of ORS 659.060 authorize the Commissioner to enter a "cease and desist" order against anyone found, pursuant to a formal hearing, to have violated the act as charged. ORS 659.010 defines a "cease and desist" order as encompassing protection of the rights of "the complainant and other persons similarly situated." See *School Dist. No. 1, Mult. Co. v. Nilsen,* 262 Or 559, 570-71, 499 P2d 1309 (1972).

The federal act is similarly interpreted. In *Jenkins v. United Gas Corp.,* 400 F2d 28, 32-33 (5th Cir 1968), the court stated:

"* * * The suit is therefore more than a private claim by the employee seeking the particular

[4] See ORS 659.060(2) and ORS 183.415(1) and (2).

job which is at the bottom of the charge of unlawful discrimination filed with EEOC. When conciliation has failed—either outright or by reason of the expiration of the statutory timetable—that individual, often obscure, takes on the mantel of the sovereign. Newman v. Piggie Park Enterprises, 1968, 390 U.S. 400, 88 S.Ct. 964, 19 L. Ed. 2d 1263; Oatis v. Crown Zellerbach, supra [398 F2d 496]. And the charge itself is something more than the single claim that a particular job has been denied him. Rather it is necessarily a dual one: (1) a specific job, promotion, etc. has actually been denied, and (2) this was due to Title VII forbidden discrimination.

"Considering that in this immediate field of labor relations what is small in principal is often large in principle, element (2) has extreme importance with heavy overtones of public interest. Whether in name or not, the suit is perforce a sort of class action for fellow employees similarly situated. * * *." (Footnote omitted.)

However, all causes instituted under Title VII or under the Oregon Fair Employment Practices Law do not qualify as class actions as a matter of law. Federal court constructions of Title VII are all in agreement. Although class actions are by definition incorporated into the legislative scheme of the Civil Rights Act, they cannot be so employed unless the action would satisfy the applicable class action prerequisites; i.e., Federal Rule of Civil Procedure 23. E.g., Oatis v. Crown Zellerbach Corp., 398 F2d 496 (5th Cir 1968). The federal rule should be applicable here also, and a class action will lie provided the applicable requirements of ORS 13.220, particularly 13.220(1) and (2)(b), are satisfied. Thus, insofar as the complainant's claim asserts that she is the subject of discrimination because she was forced to resign rather

than being given maternity leave, she is, as a matter of law, the representative of other probationary teachers who have been so required to resign.

The District further contends that the proceedings should be dismissed as moot because, during the pendency of this matter and before final determination by the Commissioner, the District withdrew its regulation requiring all pregnant probationary teachers to resign and promulgated in its place new regulations[5]

---

[5] "II. *Probationary Teachers*

"A. A probationary teacher who at the time of leaving active duty by reason of her pregnancy has completed full-time teaching with full responsibility and full pay, for five or more calendar months of the first probationary year, shall be entitled to transfer to temporary teacher status for one year and, except for services actually performed, without pay. All other probationary teachers who become pregnant must resign as of the times described in part III of this policy.

"B. As soon as she becomes aware of her pregnancy, a probationary teacher shall submit * * * either (1) her resignation or (2) her request for change of status to temporary teacher. Such document shall also state the expected date of delivery. In the event the teacher qualifies for change of status to temporary teacher, such request for change of status will ordinarily be granted by the Board as of the time described in part III of this policy; whereupon her status as a regularly employed teacher and her probationary teacher's contract shall terminate, and subject to her consent and ability to carry out her assignment in an effective manner, she shall be subject to assignment as a temporary teacher.

"C. When a teacher subject to such change of status has been regularly employed as a probationary teacher continuously during each of three full school years (whether or not they are consecutive years) and has been reelected as a teacher of the District for an additional school year, she shall acquire in this District, and this District shall recognize, all of the rights provided for permanent teachers in the Fair Dismissal Law. For purposes of this policy, a 'full

which permitted leaves of absence to be taken by certain qualified probationary teachers in conjunction with a change of status from probationary to temporary teacher. The new regulations were made retroactive to the date of the complainant's original complaint. The regulations also permitted completed years of service performed by such teachers after the leave of absence to be "tacked" onto completed years of service performed prior thereto for the purpose of obtaining credit toward the required three-year period of probation. No service performed during a year in which the leave of absence was taken was allowed toward the probationary period unless the teacher had taught eight months of that year, in which case she was credited with a full year's service. The complainant before us was rehired under the new regu-

---

school year' shall be a given school year in which the teacher has completed full-time teaching with full responsibility and full pay for eight or more calendar months. * * *

"III. *Effective Dates of Leaves, Resignations, or Changes of Status*

"A. In the case of a teacher elected to her first probationary year who becomes pregnant prior to commencing active duty, and at a time when normal pregnancy may be expected to produce a period of disability during the school year, the resignation shall be effective immediately.

"B. In all other cases, the effective date of a leave, resignation, or change of status to temporary teacher shall be based on the ability of the teacher, as determined by the principal, to carry out her assignment in an effective manner. A physician's recommendation, if any, will be taken into consideration in reaching such determination. * * *

"C. Maternity leaves and changes of status to temporary teacher shall ordinarily be for at least the remainder of the current school year with exceptions depending upon staffing needs and positive recommendation of a physician.

"* * * * *"

lations and was allowed to teach her third year and was given tenure.

■It is our opinion, however, that the matter is not moot due to the representative capacity of the private complainant and the interest of the Commissioner in assuring that other persons similarly situated are in receipt of treatment the same as that which is being afforded the individual complainant in this case. In addition, the Commissioner awarded damages to the private complainant for humiliation as well as attorney's fees, and the authority of the Commissioner to thus recompense the complainant and others similarly situated is in issue. Also, as we subsequently point out, the District's new regulations cannot, in some respects, replace the old because the new regulations themselves are in part discriminatory.

Even though it has changed the regulations in some respects, the District first contends that its old regulations in force at the time of the complaint, which require the resignation of pregnant probationary teachers, are not discriminatory. It contends that it merely sought to regulate a unique physical characteristic as it affects employment within the District. The Commissioner's contention, on the other hand, in its widest sense is that since only females can bear children, any regulation which makes it more difficult for them to be employed because of this physiological peculiarity is discriminatory on the basis of sex. ORS 659.030 defines unlawful employment practices as they apply to this case as follows:

"For the purposes of ORS 659.010 to 659.110 and 659.400 to 659.435, it is an unlawful employment practice:

"1) For an employer, because of the race, re-

ligion, color, sex or national origin of any individual or of any other person with whom the individual associates, to refuse to hire or employ or to bar or discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. However, discrimination is not an unlawful employment practice if such discrimination results from a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business, including, but not limited to, discrimination due to the physical requirements of the employment, lack of adequate facilities to accommodate both sexes or special environmental conditions justifying such employment.

"* * * * *."

■■ It is our conclusion that although regulations relating to pregnancy are adopted, and albeit only females can become pregnant, such facts do not per se result in sex discrimination as contemplated by the statute. Only when the regulations place burdens upon women because of pregnancy which bear no reasonable relation to "a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business" are such regulations unlawfully discriminatory. In this regard, the District, as an employer, has not satisfactorily explained the manner in which the required resignation of pregnant probationary teachers bears any relation or is necessary to the normal operation of its business. Allowing maternity leaves of absence in conjunction with a delayed period of evaluation given in the subsequent year, instead of in the year in which the leave is granted, would seem to accomplish the same goal of three complete years of evaluation before tenure. No one has adequately pointed out why *resignation* and *loss of*

*probationary service* in prior years are necessary to the evaluation of probationary teachers who became pregnant. There being no rational basis for such resignation and loss of service, in view of the purposes to be accomplished by the probationary period and the availability of a less onerous alternative, the application of the District's regulations resulted in discrimination on the basis of sex.

The next question is whether the new regulation concerning pregnant probationary teachers, which the District claims makes moot the resignation question and which was adopted by the District during the pendency of the matter before the Commissioner, meets the legitimate objections raised by the complaint.

■ The first part of the new regulations requires a probationary teacher to resign who has taught less than five months of her first probationary year. No one has made clear the reason for this requirement or has explained why the distinction is made between the first probationary year and any other probationary year. If sufficient time has not elapsed to evaluate her in any particular year, there is no reason for requiring her resignation, since she may be given a leave of absence and evaluated in subsequent years, and the objectives of the District of proper evaluation are thus accomplished. Based on present information, we believe that the rule requiring such an employee to resign is not in accord with the requisites of the anti-discrimination law.

Under the new regulations a probationary teacher does not receive credit for a probationary year unless she has taught at least eight months of that year. The evidence in this case indicates that teach-

ers are evaluated three times a year, the last evaluation being on or about February 1. We see no reason why she should not receive credit for a probationary year if before she is given a leave of absence the evaluation process is complete for that year.

The other obvious issue concerning the new regulations is whether a probationary teacher may apply part of a probationary year towards her three-year probationary service in which, because of pregnancy, the evaluation process has not been completed. Contrary to the Attorney General's contention, the evidence in this case requires a finding that there is a "bona fide occupational requirement reasonably necessary to the normal operation of the employer's business" for the policy of not giving probationary teachers credit for a probationary year in which the District has not had an opportunity to make its usual three evaluations. There is evidence, which there is no reason to disbelieve, that evaluation of a probationary teacher is a unitary process for each year and that if the yearly evaluation period is fragmented, an adequate opportunity for evaluation may not exist. As an illustration, in her third probationary year the present complainant was teaching under a principal with whom she had had no prior acquaintance and who received his entire impression of her abilities in a comparatively short time.

In the Commissioner's Findings of Fact, the following appears:

"GENERAL FINDINGS

"1. * * *.

"* * * * *.

"g. That in making these determinations of

fact I have construed the exception of 'bona fide occupational requirement resonably necessary to the normal operation of the employer's business' to be of extremely limited application in order to carry out the purpose and policy of ORS 659.010 to ORS 659.110 in eliminating both the practice and effects of discrimination in employment based upon sex. To do otherwise would allow an employer who normally discriminates to continue such discrimination and defeat the purpose of the law.

"* * * * *."

This finding is a frank admission that the Commissioner has slanted the thrust of the statutory scheme. It is our conclusion that it is not the Commissioner's prerogative to construe the exception of "bona fide occupational requirement reasonably necessary to the normal operation of the employer's business" to be of *"extremely limited* application." The exception must be construed fairly by giving it usual, normal, and evenhanded application, because there is no indication that the words were intended by the legislature to be applied in any other manner. The Commissioner must remember that although he is charged with the administration of the laws for the control of discrimination and that it is his duty to be diligent in ferreting out possible violations of the law, he is no longer an advocate when he puts on his judicial hat and construes legislative enactments.

Some federal courts have construed the federal statute in a manner similar to that which the Commissioner has construed ORS 659.030(1) in this case. However, the consideration given by the United States Supreme Court to the somewhat similar language in the federal statute indicates no such limited application. In *Griggs v. Duke Power Co.,* 401 US

424, 91 S Ct 849, 28 L Ed 2d 158 (1971), a racial case wherein the Court was considering the propriety of the requirements of a high school diploma and ability to pass certain tests as prerequisites to advancement, it said:

> "* * * The Act proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation. The touchstone is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited." 401 US at 431.

In *Phillips v. Marietta Corp.*, 400 US 542, 91 S Ct 496, 27 L Ed 2d 613 (1971), the company notified the plaintiff that it was not accepting job applications from women who had children of pre-school age. The Court sent the case back for the taking of evidence to determine whether the restriction concerning such "conflicting," family obligations was "a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." Mr. Justice Marshall, the sole objector, disagreed and said:

> "* * * I cannot agree with the Court's indication that a 'bona fide occupational qualification reasonably necessary to the normal operation of' Martin Marietta's business could be established by a showing that some women, even the vast majority, with pre-school-age children have family responsibilities that interfere with job performance and that men do not usually have such responsibilities. * * *." 400 US at 544.

The United States Supreme Court's position is a far cry from the contention that a "bona fide occupational qualification" is limited to those situations which require an "actor or actress" as contended by

the EEOC. See 29 CFR § 1604.1 (1971) (revised 29 CFR § 1604.2 (1973)) which was included in a footnote to Mr. Justice Marshall's dissent and ignored by the Supreme Court in *Phillips*.

In addition, the relevant Oregon statute (ORS 659.030), although it contains language substantially identical to that of the federal statute concerning the bona fide occupational qualification, continues (as the federal statute does not) by giving examples. It reads in pertinent part as follows:

> "* * * However, discrimination is not an unlawful employment practice if such discrimination results from a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business [, including, but not limited to, discrimination due to the physical requirements of the employment, lack of adequate facilities to accommodate both sexes or special environmental conditions justifying such employment]." (Bracketed material not in federal statute.)

It is thus apparent that the Oregon legislature did not desire to take the adamant, unyielding position of the EEOC which, as an illustration, has a specific regulation saying that lack of adequate facilities for the other sex cannot amount to a bona fide occupational qualification.

■ The District contends the Commissioner and the Court of Appeals erred in holding that the District had the burden of proving a bona fide occupational requirement for practices or regulations which otherwise would be discriminatory. It argues that the Commissioner's rule, then OAR 839-14-005, which required that the burden of proof be upon the Attorney General, results in the Attorney General's having to negate the "bona fide occupational requirement." The

Commissioner and the Court of Appeals did not err. The Attorney General does have the burden of proving, in the first instance, discriminatory conduct. However, considering where the knowledge lies concerning the occupational requirements of the business, it must have been intended that the operator of the business should be the one to prove why such practice is required. The federal statute is so construed. See *Griggs, supra,* where the question was whether certain tests and educational background were reasonably necessary requirements for employment. The Court said that "in the present case *the Company* [employer] has made no such showing." (Emphasis ours.)

■ The District also contends that even if it must prove a "bona fide occupational requirement," the Commissioner erred in holding that the District must do so by clear and convincing evidence rather than by a preponderance of the evidence. It relies upon ORS 183.450 which requires rules of evidence in equity cases to be applied to administrative hearings. This statute does not assist us in establishing the requisite degree of proof in the present instance. Equity requires different degrees of proof depending upon the circumstances, but we know of no equity rule applicable to discrimination cases. In the absence of any legislative indication, our inclination is that the usual burden required in equity cases should be imposed which is a preponderance or outweighing of the evidence. We believe that, as a matter of law, the District carried its burden of proving that the evaluation of a probationary teacher was a yearly process which justified not tacking together parts of years in which the principal had not had an opportunity to make the usual three evaluations.

The Attorney General contends the Court of Appeals erred in not awarding attorney's fees to complainant for the benefit of her private lawyer, and the District contends an error occurred in awarding money damages to complainant for mental suffering. After the hearing tribunal found that the District had been guilty of discrimination, a claim was filed by the complainant with the Commissioner, as follows:

"Comes now the Complainant, Sally Flury, and files with the Civil Rights Division of the Bureau of Labor her statement of pecuniary detriment suffered as a result of the discriminatory acts of the Respondent herein, namely:

"1. Attorney's fee for private
legal assistance                              $       250.00
"2. Humiliation, frustration,
anxiety and nervousness                            1,000.00

TOTAL . . . $   1,250.00

"* * * * *"

The result of this claim, after a second hearing, was the allowance by the Commissioner of $150 attorney's fees and $700 damages. The Court of Appeals reversed the award of attorney's fees and affirmed the award of damages.

There was no evidence of humiliation. No one reviled the complainant, accused her of any moral impropriety, or ridiculed or embarrassed her because she was pregnant. At most, it was reported to her by some third party that the principal had said that if he had known she was going to cause this much trouble he would have fired her. The best that can be said of complainant's proof is that she found the situation emotionally trying because when she found the rules required her resignation, she became inse-

cure and upset about what the future would bring. Her husband was starting a new business and they needed the money which her wages brought. In addition, she was caught between the old and the young factions among the teachers and between two teachers' organizations. People talked about her because she was challenging the status quo, some indicating she was a troublemaker and some supporting her. She had to make decisions as to how she should proceed upon conflicting advice. In effect, she was placed in a position of conflict and financial insecurity and this caused anxiety.

■ Because the complaint filed by the Attorney General upon behalf of the complainant challenged only the requirement that she resign and did not challenge the rule that a leave of absence for the remainder of the year was required or claim she was entitled to paid leave, any loss of money for the balance of the year and her resultant anxiety could not have been caused by anything of which she complained. She worked the following year under the new regulations and received tenure. The other pressures of which she complains came about principally from the bringing of the legal proceedings and are the normal results of being a litigant, particularly if the litigation is a matter of interest to a considerable number of people. She did not suffer any anxiety or emotional distress for which the law usually allows damages, since these types of stress are inherent in most litigation. It can be argued that she should not have been placed in a position where she had to assert her rights, but the same can be said of the successful plaintiff in any case. Awards of damages of this kind are usually limited to malicious prosecution and simi-

lar actions. By way of comparison, see *Williams v. Joyce,* 4 Or App 482, 479 P2d 513, 40 ALR3d 1272 (1971), in which damages for humiliation were approved where rental of living premises to a black was refused because she was black. An award would be proper in such a case because of the indignity visited from the inference that black people are inferior. There was no similar inference which could be drawn in the present case. Thus, with respect to the individual complainant before us, money damages for humiliation should have been denied.

■ Neither should attorney's fees have been awarded by the Commissioner. As the Court of Appeals pointed out, there is nothing in the statute concerning an award of attorney's fees and, heretofore, this court, in adopting a narrow policy on the allowance of attorney's fees, has held that they would not be allowed unless they are expressly authorized by statute or contract. *Hughes v. Bembry,* 256 Or 172, 177-78, 470 P2d 151 (1970). In addition, the law provides for the representation of a complainant by the Attorney General. Under these circumstances there is no reason to believe the legislature contemplated an award of attorney's fees for the complainant. See *State Div. Human Rights v. Luppino,* 35 App Div 2d 107, 313 NYS 2d 28 (1970), *aff'd.,* 29 NY 2d 558, 324 NYS 2d 298, 272 NE 2d 885 (1971). Although attorney's fees are allowed in some cases under the federal act, under that act the complainant is represented by private counsel, while under the Oregon statute the complainant's case is prosecuted by the Attorney General.

The final duty of this court is to indicate the changes which this opinion requires in the Commissioner's remedial order and to take up the District's

objections to certain parts thereof which it claims are harsh, unreasonable, and contrary to the law. In carrying out this duty we must also consider the extent of the Commissioner's authority and the scope of this court's review of factual matters. ORS 659.060(3) provides:

> "After considering all the evidence, the commissioner shall cause to be issued findings of facts, and conclusions of law. He shall also issue an order dismissing the charge and complaint against any respondent not found to have engaged in any unlawful practice charged and an appropriate cease and desist order against any respondent found to have engaged in any unlawful practice charged."

A cease and desist order is defined by ORS 659.010(2) as follows:

> " 'Cease and desist order' means an order signed by the commissioner, *taking into account the subject matter of the complaint* and *the need to supervise compliance* with the terms of any specific order issued to eliminate the effects of any unlawful practice found, addressed to a respondent requiring him to:

> "(a) Perform an act or series of acts designated therein and reasonably calculated to carry out the purposes of ORS 659.010 to 659.110 and 659.400 to 659.435, *eliminate the effects of an unlawful practice found,* and protect the rights of the complainant and *other persons similarly situated;*

> "(b) Take such action and *submit such designated reports* to the commissioner on the manner of compliance with other terms and conditions specified in his order *as may be required to assure compliance therewith;* or

> "(c) Refrain from any action designated in the order which would jeopardize the rights of the complainant or other person similarly situated or

frustrate the purpose of ORS 659.010 to 659.110 and 659.400 to 659.435." (Emphasis ours.)

The above statutes set out the Commissioner's authority. By ORS 659.085 this court's scope of review of factual matters is made identical to that provided by the Administrative Procedures Act. ORS 183.480(7)(d) of that act provides that a reviewing court may reverse or remand an administrative order if it finds the order is not supported by reliable, probative, and substantial evidence. The court may, of course, reverse or remand if the order is contrary to law or not within the issues of the case.

We have set forth verbatim in the margin the Commissioner's remedial order.[6] We have done so,

---

[6]

"II

"SPECIFIC REMEDY FOR COMPLAINANT

"To eliminate the effects upon the Complainant of the Respondent's unlawful employment practices found herein, the Respondent shall deliver to the office of the Oregon Bureau of Labor, Room 479, State Office Building, Portland, Oregon, within ten (10) days of the date of this Order, a cashiers check or money order payable to Mrs. Sally Flury in the amount of $850.00 as and for reimbursement for out of pocket attorney's fees and for humiliation, frustration, anxiety and nervousness. This sum shall draw interest at the rate of 6% per annum from date of this Order to date of payment.

"III

"INJUNCTIVE PROVISIONS

"The Respondent, School District No. 1, Multnomah County, its board, agents, officers, employes and successors in interest and all persons in active concert or participation with any of them are enjoined from engaging in any acts or practices which have the purpose or effect of refusing to hire or employ or to bar or discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the sex of the individual or of any

and have explained our scope of review as well, to illustrate the lengths to which the Commissioner has gone in his order and our authority to deal with what appears to us to be an excessive exercise of power.

other person with whom the individual associates, including, but not limited to:

"1. Printing or circulating or causing to be printed or circulated any statement, advertisement or publication, or to use any form of application or to make any inquiry in connection with prospective employment which expresses directly or indirectly any limitation, specification, or discrimination, unless based upon a bona fide occupational qualification.

"2. Discharging, expelling or otherwise discriminating against any person because said person has opposed any unlawful employment practices based upon the sex of any person or because said person has filed a complaint, testified or assisted in any proceeding under ORS 659.010 to 659.110.

"3. Aiding, abetting, inciting, compelling, or coercing the doing of any unlawful employment practices based upon the sex of any person under ORS 659.010 to 659.110, or to attempt to do so.

"4. Limiting, segregating, or classifying Respondent's employes in any way which would deprive or tend to deprive them of equality in the terms, conditions, privileges and opportunities of employment, or of benefits accruing through employment but enjoyed legally or practically after termination of employment.

"5. Engaging in any acts or practices which perpetuate or tend to perpetuate the discriminatory effects of practices which in the past have had the effect of discriminating against individuals because of the sex of any person.

"IV
"LIAISON

"1. The Respondent, School District No. 1, Multnomah County, will within thirty (30) days of this Order, designate a person who will be an established liaison between School District No. 1, and the Civil Rights Division of the Oregon Bureau of Labor to aid in the implementation of the remedies required by this Order. Within 30 days thereafter, and at other appropriate times the liaison shall have the affirmative duty, on behalf of Respondent, to furnish a copy of this Order to all persons who are currently involved or who will be-

Part II of the order, "Specific Remedy for Complainant," which requires the payment of $850 for emotional suffering and attorney's fees to the complainant, must be deleted for reasons previously specified.

come involved in recruiting, screening, considering, notifying or otherwise processing certificated personnel in their employment relations including advancements with Respondent.

"2. The Respondent, School District No. 1, Multnomah County, will submit to the Civil Rights Division of the Oregon Bureau of Labor for approval within sixty (60) days of this Order, either proof of compliance or written reports as follows:

"a. Within sixty (60) days after entry of this Order and at sixty (60) day intervals thereafter for a period of three (3) years, the liaison representative for School District No. 1, will file with the Civil Rights Division, written reports specifying in detail the efforts made by School District No. 1, during the preceding sixty (60) day period to implement each and every requirement of this Order, and further, specifying in detail the results of said efforts.

"b. As part of the aforementioned required reports commencing within sixty (60) days after the entry of this Order, the liaison representative for School District No. 1, will provide an organizational and personnel chart showing those certificated personnel who are currently affected by pregnancy, maternity or complications thereof. The chart will be kept current by the liaison representative from figures and facts of record as of the first day of each said reporting period. The said chart shall show the name of the teacher involved with each particular position she filled before and after her leave together with the salary of that person in each instance and the dates she filled the positions.

"c. Within sixty (60) days after receipt of this Order by the Respondent the liaison representative shall post a copy of the Order in this case in the usual place or places where notices are posted for certificated personnel in each school or administration building in School District No. 1. The copy of the Order shall be continuously posted for not less than thirty (30) days. Thereafter, and for the next three consecutive years a copy of the Order shall be posted between the dates of September 1 and October 1 as herein above set out.

Part III, entitled "Injunctive Provisions," must be redrawn and limited to prohibiting the District from requiring the resignation of pregnant probationary teachers, which was the sole charge made

"V

"SPECIFIC CLASS REMEDY PROVISIONS INVOLVING PREGNANCY OR POST PREGNANCY SITUATIONS

"1. The Respondent, School District No. 1, shall not have or use any written or unwritten employment policy or practice which excludes from employment as certificated personnel any applicant for or employe of the Respondent because of pregnancy, or other disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, or recovery therefrom except on an individual basis of a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business. If the Respondent shall contend that a bona fide occupational requirement exists in an individual case the Respondent must specify in writing the reason or reasons for the existence of such requirement and provide a copy thereof to the Civil Rights Division of the Bureau of Labor and to the applicant or employe. If the Labor Commissioner requests, the Respondent must demonstrate both the bona fide requirement and the necessity claimed to exist.

"2. In interpreting and applying any of the requirements herein, whether affirmative or negative, disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth and recovery therefrom are, for all job-related purposes, temporary disabilities and must be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices, including, but not limited to, the commencement and duration of leaves, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities. Provided, however, that where the termination of an employe who is temporarily disabled is caused by employment practices or rules under which insufficient or no leave is available for pregnancy or maternity situations, such a termination violates the terms of these Orders if it pre-

against the District. The Commissioner properly determined that the regulation requiring such resignations is discriminatory and he has the authority to issue an order prohibiting such practices; but he does

vents, in fact, reasonable pregnancy and maternity leaves and it is not justified by business necessity.

"3. During the probationary period evaluation of teachers who become pregnant shall be scheduled by Respondent at such times and in such manner that an adequate evaluation may be made while allowing the pregnant teacher a reasonable period or periods of absence from classroom and other teaching duties for pregnancy and maternity purposes regardless of the time of year her pregnancy commences or ceases.

"For the purpose of this requirement an adequate evaluation will be considered to have been made or waived by the Respondent if, under all circumstances of a given case including, but not limited to prompt knowledge of the pregnancy or any complications thereof, the Respondent had an adequate opportunity to evaluate the teacher.

"4. The Respondent, School District No. 1, shall eliminate the effects of its unlawful resignation policy and practice based on pregnancy for certificated personnel by:

"a. Furnishing a copy of this Order to and offering to rehire, within 60 days of the date of this Order, all certificated personnel who resigned since August 21, 1969, with the Respondent under the same terms and conditions that reasonably would have existed but for the required resignation. If accepted by the individual the position shall be provided.

"b. Offering all such persons who resigned since August 21, 1969, compensatory damages including, but not limited to:

"(1) Lost wages or salary.
"(2) All forms of out of pocket expenses.
"(3) Mental or emotional suffering or distress.

"c. Reporting in writing to the Civil Rights Division of the Bureau of Labor each sixty (60) days beginning February 1, 1974, and continuing until released from further reports, or complete compliance:

"(1) The names, addresses and phone numbers of all persons with whom satisfactory resolution of the requirements of subsections (a) and (b) have been tentatively completed, together with copies of any documents to be entered into and

not have the authority to enjoin the District from enforcing any regulation concerning which no charges have been filed.

Part IV of the order, entitled "Liaison," provides for a complex, lengthy, expensive, and severe

the terms of such resolution for prior approval by the Civil Rights Division of the Oregon Bureau of Labor.

"(2) The names, addresses and phone numbers of all persons covered by this section who have not, or will not, enter into a resolution of the requirements of subsections (a) and (b), together with the reasons no tentative resolution has been agreed upon.

"(3) The names, last known addresses and phone numbers of all persons covered by this section who cannot be contacted by the Respondent or its agents together with a statement of the specific actions taken in an effort to contact each person.

"d. Establishing a uniform method in writing through which job openings, advancements and transfer opportunities are announced and by which applicants therefor and those on pregnancy or maternity leaves are notified, solicited, screened, considered and otherwise processed to assure those certificated personnel who will be or are on a pregnancy or maternity related leave will have adequate opportunity to resume active employment with the Respondent without losing any benefits, current or future, which would normally accrue to any certificated personnel not on leave. Provided, however, nothing in this provision shall require the Respondent to pay salary to persons on leave.

"e. Establishing a uniform written method by which salaries and salary increases are determined in pregnancy and maternity situations, whether unilaterally or through a bona fide collective bargaining process.

"5. For the purposes of this order pregnancy or maternity related leaves include but are not necessarily limited to:

"a. Absences because of pregnancy or complications of pregnancy.

"b. Absences because of delivery or recuperation after delivery.

"c. Absences due to miscarriage or abortions or contemplated abortions including recuperation thereafter.

"6. If any certificated personnel who resigned or was discharged since August 21, 1969, because of Respondent's

supervision of the future conduct of the District. The issue is thus raised whether the legislature intended that any unlawful employment practice, standing alone, will sustain any and all supervisory requirements which the Commissioner might issue to assure compliance with his order, regardless of the nature of the unlawful practice, the deleterious effects of such supervisory requirements upon the employer, and the likelihood that the employer would voluntarily comply with the order without such supervision. Stated differently, may the Commissioner, if an unlawful prac-

practices and policies involving pregnancy does not agree to a proposed resolution of her case by September 1, 1974, she may request that a hearing be had on the facts of her case and an order entered thereon as provided in Section 7, set out hereinafter.

"7. The office of Commissioner of the Oregon Bureau of Labor or its successors shall retain jurisdiction in this matter and if for any reason not specified herein new facts should develop which would affect any of the remedies provided herein, or the unlawful employment practice of the Respondent or any of its board, agents, officers, employes or successors should continue, or any person or party affected thereby contends that any of the provisions of these Orders are ambiguous or need to be interpreted, the Complainant, any person similarly situated, the administrator of the Civil Rights Division, the Respondent, or any of them may petition the Labor Commissioner for a supplementary order and relief which would interpret provisions of the Orders, or provide an adequate remedy for the Complainant or other persons similarly situated, to carry out the purposes of the Civil Rights Laws, and eliminate the effects of the unlawful practices found to exist.

"8. If this Order is appealed and this Order, or any portion thereof is stayed during the appeal the time or times specified herein for the performance of any act or series of acts will automatically be extended to commence thirty (30) days subsequent to the decision of the highest appeal court which decided any issue in this case.

"Dated this 12 day of December, 1973.

/s/   N. O. Nilsen

N. O. NILSEN, Commissioner
Oregon State Bureau of Labor"

tice exists, make any supervisory order he sees fit, or must the necessity for such an order be "supported by reliable, probative and substantial evidence in the whole record"?

■ It is our conclusion that the legislature did not intend to vest in the Commissioner completely unfettered discretion to the extent that the Commissioner could issue an order without some showing of necessity therefor. This record is devoid of evidence which indicates that the District will not comply, and the imposition of such a tremendous and expensive burden seems to us to be completely unjustified and unintended by the statute in a case where there is no evidence of unwillingness to comply. This is not the kind of case that would require constant surveillance in the absence of evidence indicating to the contrary. The statute states that the party found guilty of discriminatory practices may be required to "take such action and submit such designated reports * * * on the manner of compliance * * * as may be required to assure compliance." There is no showing in this case that such drastic and expensive supervision "may be required to assure compliance." While the District was intentionally carrying out a regulation which violated the act, the record is devoid of any indication that the District was consciously discriminating. *Cf. Carpenters Local v. Labor Board,* 365 US 651, 655, 81 S Ct 875, 6 L Ed 2d 1 (1961), which quoted with approval from *Consolidated Edison Co. v. NLRB,* 305 US 197, 236, 59 S Ct 206, 83 L Ed 126 (1938) in its holding that the power of the NLRB

> "* * * to command affirmative action is remedial, not punitive, and is to be exercised in aid of the Board's authority to restrain violations

and as a means of removing or avoiding the consequences of violation where those consequences are of a kind to thwart the purposes of the Act." The "Liaison" provision of the order will be deleted in its entirety.

The last part of the order is entitled "Specific Class Remedy Provisions Involving Pregnancy or Post Pregnancy Situations." The provisions of paragraphs 1 and 2 thereof must be limited to the forced resignation of pregnant probationary teachers, the specific charge made against the District. Paragraph 3 thereof seems to limit the time and manner in which the District may evaluate probationary teachers. There is nothing in this record which indicates that the judgment of the District is faulty in its requirement of three years' evaluation and there is no basis in the evidence upon which to find otherwise. There is evidence that some probationary teachers are so brilliant that the District pretty well determines before the elapse of three years that it will grant them tenure; but it is within the District's authority to make certain that their brilliance has the requisite staying power. We can imagine the charges of discrimination that would arise from having different probationary periods for different teachers.

Paragraph 4a of Part V requires the District to provide jobs for and to rehire within 60 days all teachers who, pursuant to the invalid rule, have resigned since the sex discrimination law went into effect on October 21, 1969. The evidence indicates that the District employs about 6,000 teachers annually and that somewhere between 50 and 60 probationary teachers normally have been required to resign each year because of pregnancy. There is no

indication of how many jobs would have to be provided for resigned teachers.

The question is raised whether the Commissioner may rectify the effects of the discrimination by the District as far back as the time the law was enacted or whether he is limited to discriminatory acts simultaneous with or subsequent to the filing of the present complaint. The statute authorizes the Commissioner to "eliminate the effects of any unlawful practice." The federal act has usually been construed to authorize remedial relief from discrimination which occurred prior to the actual complaint under consideration. In *Rosen v. Public Service Electric and Gas Company*, 477 F2d 90, 96 (3d Cir 1973), the court granted relief from discrimination of the kind complained of as far back as the effective date of the federal Civil Rights Act. Based on the wording of the Oregon statute, it is our belief that the legislature intended, in this respect, to authorize the same scope of relief as is authorized under the federal act. Such relief is not mandatory but is within the judgment vested in the Commissioner.

However, we believe the Commissioner may not, in the absence of specific authorizing provisions, require the District to hire unneeded teachers. The Commissioner may require that those probationary teachers who were forced to resign because of pregnancy be recompensed for losses they incurred thereby, but the District cannot be forced to hire teachers in the absence of need. The paragraph may be amended, however, to require the District to give those who have been forced to resign because of pregnancy preference in openings for which they are qualified.

We also believe the Commissioner lacks the

authority to require the District to give such teachers immediate tenure, although they have not taught for the necessary probationary period, merely because they would have had tenure by this time had they not been forced to resign. The District has not completed evaluating their competency. Providing competent teachers for children is as important in the scheme of things as are the individual rights of teachers to have tenure. That part of the order which requires furnishing a copy of the order to those who have been required to resign is proper.

Paragraph 4b requires that awards for damages be made for emotional and mental suffering. If any awards for emotional and mental suffering are made, such suffering must be of greater consequences and arise out of more aggravated circumstances than those which the evidence disclosed in the case of the present complainant.

Paragraph 4c requires more elaborate reporting to the Commissioner. The Commissioner is entitled to a list of names and last known addresses of all probationary teachers who have been forced to resign because of pregnancy since the enactment of the laws relating to discrimination on the basis of sex. Also, the Commissioner is entitled to be informed of any settlement which the District proposes to enter into with any such teacher. This will give the Commissioner the necessary information to make sure that the District is complying with his order. All other provisions are not justified at this time by the evidence. By this statement we do not mean to indicate that the Commissioner may not have continuing jurisdiction of this matter, that he may not subsequently request appropriate information from the District on the status

of the District's negotiations with specific resignees, if necessary, or that he may not take future action after a reasonable time to compel the District to comply with his order if it fails to do so.

Paragraphs 4d and 4e are stricken from the order since they concern matters which do not come within the issues litigated in this proceeding.

Paragraphs 5 and 6 are general provisions defining pregnancy and affording hearings before the Commissioner upon the claims of any resignee with whom the District cannot reach a settlement. These provisions are proper as long as the Commissioner determines that relief is desirable under all the circumstances.

Paragraph 7 contains general provisions for continued jurisdiction by the Commissioner for the purpose of carrying out the requirements of the order. For reasons previously set forth, these requirements will be limited, as they are not now limited, to those matters which directly relate to forced resignation and compensation therefor.

The case is remanded to the Commissioner of Labor for issuance of a new order in conformance with this opinion.