Argued and submitted June 7, 1983, reversed December 11, 1984

CIVIL SERVICE BOARD OF THE
CITY OF PORTLAND,
*Respondent on Review,*

*v.*

BUREAU OF LABOR AND INDUSTRIES,
*Petitioner on Review.*

(NO. 4-79; CA A20231; SC 29359)

692 P2d 569

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Richard A. Braman, Office of City Attorney, Portland, argued the cause and filed the brief for respondent on review.

CARSON, J.

## CARSON, J.

The Bureau of Labor and Industries (Bureau)[1] petitioned for review of a decision of the Court of Appeals that set aside a part of the order of the Commissioner of the Bureau (the Commissioner) directed to respondent, the Civil Service Board of the City of Portland (Employer).[2] The Court of Appeals held that the Commissioner had erroneously interpreted a provision of law in her determination that Employer had engaged in unlawful employment practices by refusing to hire persons over the age of 32 for positions as fire fighters with the Portland Fire Bureau (Fire Bureau). The Court of Appeals found, as a matter of law, that the hiring practice was not unlawful age discrimination because it was based on a bona fide occupational requirement (BFOR) reasonably necessary to the normal operation of the Fire Bureau's business. We accepted review to determine the proper scope of review and the validity of the Commissioner's action. For the reasons discussed below, we reverse the decision of the Court of Appeals.

### FACTUAL BACKGROUND

Tylan J. Peters, an honorably discharged war veteran, applied for and successfully completed examinations to qualify as a Portland fire fighter. His name was placed on an eligibility list from which the Fire Bureau offers employment, in rank order, to all applicants who pass a routine physical examination. However, on October 13, 1977, Peters' thirty-first birthday, his name was removed from that list, pursuant to a provision of the Portland City Charter.[3] Peters filed an

---

[1] Although the matter is not at issue in this case, we note that the parties, upon occasion, have interchanged the denomination of the respondent as "Bureau of Labor and Industries" and "Mary Wendy Roberts, Commissioner." The correct denomination may not be free from doubt, but we choose, for the purposes of this case, to refer to the Commissioner as the appropriate respondent. ORS 651.020, 651.030 and 651.050.

[2] The named party is the Civil Service Board of the City of Portland. The Board is a branch of city government. It is the city which is the "employer" under ORS 659.010(6).

[3] Portland City Charter, Section 4-106, provided:

"All patrolmen shall be between the ages of 21 and 30 years and all hosemen [fire fighters] shall be between the ages of 21 and 26 years on the dates of their respective appointments; provided, that in the case of an applicant for either of said positions who * * * has honorably served in the armed forces of the United States of America during any war * * *, the maximum age limit shall be extended to 35 years for a patrolman and to 31 years for a hoseman."

age discrimination complaint with the Civil Rights Division of the Bureau. The Commissioner caused the matter to be investigated and then charged Employer with an unlawful employment practice. A contested case hearing was held in July 1979. A post-hearing brief was submitted by Employer in that same month. Sometime thereafter, it was stipulated that Peters should have remained eligible for appointment until his thirty-second birthday. Peters passed the routine physical examination and was appointed as a fire fighter on December 21, 1979.

The Commissioner continued the proceedings, focusing on the validity of the employment practice involved, pursuant to her authority under ORS 659.100(1).[4] Her authority to consider the practice, irrespective of an individual's complaint, and to issue an order applying to persons similarly situated to a complainant and affecting future employment practices of Employer is not challenged before us.[5]

On October 21, 1980, the Commissioner issued an order which decided that the refusal to hire persons over age 32 as fire fighters was an unlawful employment practice. She found that the maximum hiring age was not a BFOR reasonably necessary to the normal operation of the Fire Bureau's business. This finding was based on Employer's failure to satisfy a test derived from *Usery v. Tamiami Trail Tours, Inc.,* 531 F2d 224 (5th Cir 1976), which was adopted by the Commissioner in contested case proceedings in *Matter of Clackamas County Fire District No. 1* (Bureau of Labor and Industries, No. 5-78, February 13, 1980), and in the instant proceedings. That test was expounded in the Commissioner's opinion in the instant case as follows:

---

[4] ORS 659.100(1) provides:

"The Bureau of Labor and Industries may eliminate and prevent discrimination in employment because of race, religion, color, sex, national origin, marital status, physical or mental handicap or age if the individual is 18 years of age and over and under 70 years of age, or by employers, employes, labor organizations, employment agencies or other persons and take other actions against discrimination because of race, religion, color, sex, national origin, marital status, physical or mental handicap or age if the individual is 18 years of age and over and under 70 years of age as provided in ORS 659.010 to 659.110 and 659.400 to 659.435. * * *"

On the date of the contested case hearing this statute authorized the Bureau to prevent discrimination against individuals under 65 years of age.

[5] As did the Court of Appeals in this case, 61 Or App at 73-74 n 3, we have determined that the case is not moot, notwithstanding the eventual employment of Mr. Peters.

"In my Amended Final Order in the *Matter of...Clackamas County Fire District No. 1...* (Bureau of Labor and Industries Number 5-78, 1980), I specified a substantive test for a BFOR defense made in cases involving considerations of public safety. As applied in the instant case, this test is:

"(1) Is hiring physically fit Fire Fighters reasonably necessary to the essence of the Portland Fire Bureau's business? If so,

"(2) (a) Is there a factual basis for believing that all or substantially all individuals who have passed their 31st or 32nd birthday would be unable to perform the job of Fire Fighter safely and efficiently? Or

"(b) Would it be impossible or highly impractical to screen applicants on an individual basis to differentiate physically qualified from physically unqualified applicants?" *Matter of Civil Service Board of Portland* (Bureau of Labor and Industries, No. 4-79 at 13, October 21, 1980).

In the October 21, 1980 order and a January 23, 1981 addendum, the Commissioner ordered Employer to award Peters seniority, compensation and benefits from June 21, 1978, the date he would have been appointed but for the discrimination, until December 12, 1979, the date he was appointed. The October 21, 1980 order also directed Employer to "[t]ake whatever steps are necessary to ensure that each future applicant for the position of Portland Fire Bureau Fire Fighter is not disqualified solely because of his or her age." *Matter of Civil Service Board of Portland, supra* at 17.

The Court of Appeals modified the order, setting aside the Commissioner's determination that the maximum hiring age of 32 for fire fighters constituted an unlawful employment practice. The Court of Appeals reviewed pursuant to ORS 183.482(8)(a), treated the issue as one of statutory interpretation, and decided that the Commissioner erroneously applied "an abbreviated *Tamiami* test." *Civil Serv. Bd. of Portland v. Bureau of Labor,* 61 Or App 70, 84, 655 P2d 1080 (1982).

## THE TERM "BFOR REASONABLY NECESSARY TO * * * THE EMPLOYER'S BUSINESS."

■ We now turn to an examination of the statutory policy and terms that guide the Commissioner's decision in the instant case. The legislature has set a broad policy goal in ORS 659.015:

"It is declared to be the public policy of Oregon that available manpower should be utilized to the fullest extent possible. To this end the abilities of an individual, and not any arbitrary standards which discriminate against an individual solely because of his age, should be the measure of the individual's fitness and qualification for employment."

This policy is expressed as a prohibition in ORS 659.030(1):

"(1) For the purposes of ORS 659.010 to 659.110, 659.227, 659.330, 659.340 and 659.400 to 659.435, it is an unlawful employment practice:

"(a) For an employer, because of an individual's race, religion, color, sex, national origin, marital status or age if the individual is 18 years of age or older and under 70 years of age, * * * to refuse to hire or employ or to bar or discharge from employment such individual. However, discrimination is not an unlawful employment practice if such discrimination results from a *bona fide occupational requirement reasonably necessary to the normal operation of the employer's business.*

"(b) For an employer, because of an individual's race, religion, color, sex, national origin, marital status or age if the individual is 18 years of age or older, * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

"* * * * *" (Emphasis added.)

Where the Commissioner must determine whether an employer has engaged in an unlawful employment practice, the employer may claim that the discrimination results from a BFOR reasonably necessary to the normal operation of the employer's business. Once the Commissioner determines the business' normal operation and that the occupational requirement is "bona fide" rather than a pretext for discrimination, the critical determination made by the Commissioner is whether the practice results from an occupational requirement "reasonably necessary" to such operation. This is the statutory term the Commissioner must apply in a given situation. If the discrimination is a BFOR, the practice is not unlawful.

The Commissioner, in reviewing the evidence taken in the contested case hearing and in issuing her order, was required to determine whether the refusal to hire persons over 32 years of age as fire fighters was "reasonably necessary" to the operation of the Fire Bureau. In order to accomplish this task, the Commissioner used a test derived from *Usery v.*

*Tamiami Trail Tours, Inc., supra,* and also announced in *Matter of Clackamas County Fire District No. 1, supra.* She thus interpreted ORS 659.030(1) to include a standard that Employer must meet in order to avail itself of the BFOR exception: Employer must show that persons over 32 years of age would be unable safely and efficiently to function as fire fighters or that it would be highly impractical to distinguish physically qualified applicants from those not physically qualified on an individual basis. The Commissioner found that Employer had not made either showing.

This court has decided a similar case. In *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979), decided before the adoption of the present statute setting the scope of judicial review of orders in contested cases, we examined an agency's interpretation of a statute that required "good cause" to be shown for voluntarily terminating one's employment in order to qualify for unemployment benefits. We stated:

> "Like standards such as 'fair' or 'unfair,' 'undue' or 'unreasonable,' or 'public convenience and necessity,' 'good cause' in its own terms calls for completing a value judgment that the legislature itself has only indicated: evaluating what are 'good' reasons for giving up one's employment and what are not. Judicial review of such evaluations, though a 'question of law,' requires a court to determine how much the legislature has itself decided and how much it has left to be resolved by the agency. For an agency decision is not 'unlawful in substance,' ORS 183.482(8) [1977], if the agency's elaboration of a standard like 'good cause' is within the range of its responsibility for effectuating a broadly stated statutory policy." 285 Or at 550.

Thus, this court must examine the BFOR language in ORS 659.030(1) in order to determine whether the legislature has precluded the determination made by the Commissioner.

The phrase "bona fide occupational requirement reasonably necessary to the normal operation of the employer's business" was added to ORS 659.030(1) in 1969. Or Laws 1969, ch 618, § 3. The legislative history is scant, the most relevant material being a letter from the Oregon State Bar's Legal Service to Legislature, which stated that similar language was used in federal legislation to distinguish sex discrimination in employment from legitimate employment

concerns affecting the employment of persons of one or the other sex. Pertinent to our discussion here, the letter states:

> "Such language, or something similar, would still require implementation by the Labor Department in the form of rulings and regulations. By providing some guidance in the law, the discretion available to the Labor Department in implementing the law is controlled to some extent. In the final analysis, however, the attitude of the Department in this area would dictate the application of the law." Letter from Donald J. Georgeson, Oregon State Bar, Legal Service to Legislature, to Rep. McCready, May 14, 1969, p 2 (filed in separate Exhibit File, Senate Labor and Industries Committee, HB 1297, 1969).

■ Age discrimination was not included in ORS 659.030(1) in 1969. However, since 1977, age has been included as one type of discrimination to which the BFOR exception applies.[6] Or Laws 1977, ch 770, § 1. At the same time, the legislature deleted a part of ORS 659.030(1). This probably was done in response to our opinion in *School District No. 1 v. Nilsen,* 271 Or 461, 534 P2d 1135 (1975), in which we held that the BFOR exception was to be given an evenhanded application, not the extremely limited application provided in that case by the then-Commissioner. We contrasted the adamant, unyielding position of the federal EEOC in interpreting the federal BFOR exception with that apparently envisioned by the Oregon Legislature. 271 Or at 482. The language that we pointed to as expressive of this broader intention is the language excluded by the 1977 legislature. The BFOR exception is no longer explained as

> "* * * including, but not limited to, discrimination due to the *physical requirements* of the employment, lack of adequate facilities to accommodate both sexes or special environmental conditions justifying such employment." Or Laws 1977, ch 770, § 1.

This deliberate exclusion can be viewed as nothing other than

---

[6] One of the statutes repealed at the time age was added to ORS 659.030(1) was ORS 659.024. Subsection (2) of that repealed statute prohibited the use of employment inquiries which expressed a limitation, specification or discrimination based on age unless they were based upon a "bona fide occupational qualification." Or Laws 1963, ch 622, § 5. The Commissioner is provided with authority to adopt reasonable rules establishing which inquiries are based on such bona fide occupational qualifications. ORS 659.103(1)(c).

an expression of legislative intent that the BFOR exception is not a broad excuse for discriminatory practices of Oregon employers. *Nilsen's* requirement of evenhanded application is still valid, but to the extent that *Nilsen* suggested that a broad or liberal interpretation be given to the BFOR exception, it has been "legislatively overruled."

We agree with the Commissioner that in the instant case Employer's defense involving the adverse impact upon pension and disability plans that would be encountered by hiring "older" fire fighters cannot justify hiring only those applicants under 32 years of age. Also attributable to the legislature in enacting ORS 659.030(1) is that merely economic justifications for discrimination are not to be included as BFORs reasonably necessary to an employer's business. Such an interpretation would emasculate the statute, which by its nature and purpose elevates concerns about discrimination over the historically prevailing economic justifications for discriminatory practices. The purpose of this statutory scheme would be seriously threatened by an interpretation that the BFOR exception included economic justifications for discrimination. *See* ORS 659.028 (employee benefit plans do not excuse the failure to hire an individual).

The legislature has not expressed whether concerns of public safety, the relationship of chronological age to job performance, and the impracticality of individually screening applicants for physical qualifications are included in the BFOR exception analysis. However, the Commissioner's consideration of these items appears to achieve the balance between discrimination and BFORs that the legislature has established in ORS 659.030(1). Her use of the test derived from *Tamiami* is a permissible interpretation of the statutory BFOR exception and adequately addresses the legislative purposes of prohibiting unlawful discrimination and excepting from that prohibition employment requirements which are reasonably necessary to the normal operation of the employer's business. The Commissioner correctly perceived, with respect to the items listed above, that the legislature had left to her judgment the interpretation of the BFOR exception on a case-by-case basis. We cannot say that the Commissioner has "erroneously interpreted a provision of law," in this case ORS 659.030(1). ORS 183.482(8)(a).

■     The Court of Appeals undertook a thorough review of federal caselaw and ultimately determined that the Commissioner's order did not follow the principle enunciated in *Tamiami* and other federal cases that public safety is a critically important factor in the BFOR analysis. The Court of Appeals concluded that Employer had demonstrated the reasonableness of the Fire Bureau's assessment of the risk of injury or death in eliminating the maximum hiring age. However, the question for the reviewing court is whether the Commissioner erroneously interpreted ORS 659.030(1), and, if not, whether there was substantial evidence to support the Commissioner's finding that Employer had not met the test she adopted. The question is not whether the Commissioner erroneously interpreted the *Tamiami* test or whether Employer met a federally established test. That the source of her interpretation was federal caselaw in no way suggests that she must be faithful to federal law. So long as the interpretation of the Oregon statute is not erroneous, the source of that interpretation is not meaningful under the scope of review provided in ORS 183.482(8)(a) and whether Employer met a federal test is irrelevant.

■     Employer contended to the Court of Appeals that the Commissioner's order was not supported by substantial evidence in the record. The burden of proving the applicability of a BFOR exception is upon the employer. *School District No. 1 v. Nilsen, supra.* Evidence was presented that persons over 32 years of age could safely and efficiently perform the tasks of a fire fighter and that it was not highly impractical, medically or economically, to screen applicants on an individual basis by performing rigorous, thorough medical examinations. We find no merit in this contention.

■     Employer made numerous other assignments of error to the Court of Appeals. Two of these warrant discussion in light of our reversal of the Court of Appeals' decision. Employer argued that Portland City Charter, Section 4-106 may be "referred to and pleaded as a public statute" pursuant to ORS 221.710 and that Section 4-106, which is particular, should prevail over the general ORS 659.030 before the Commissioner. *See* ORS 174.020. Assuming *arguendo* that a city charter provision and a state statute are otherwise equal, we are not persuaded that this "particular" authorizing provision in a city charter may violate a "general" prohibition

provision in a state statute on the basis of a statute governing statutory construction.

■    Employer also argued that the application of ORS 659.030 to invalidate Section 4-106 was a violation of the "home rule" amendments of the Oregon Constitution. A review of this court's decision in *LaGrande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204 (1978), leads to the conclusion that ORS 659.030 does not address the "structure and procedures of local agencies" nor is it "irreconcilable with the local community's freedom to choose its own political form." ORS 659.030 is constitutional in this respect.[7]

The decision of the Court of Appeals is reversed and the order of the Commissioner is reinstated.

---

[7] We take judicial notice, ORS 221.710, of the fact that the present Portland City Charter 4-106 does not conflict with ORS 659.030. It was amended in November 1982 to conform to the discrimination statute.