On respondent Phyllis J. Potter's reconsideration filed January 31 and respondent Bureau of Labor and Industries' reconsideration filed February 25, reconsiderations granted; former opinion (61 Or App 182, 656 P2d 353) affirmed as modified August 17, petitions for review allowed October 25, 1983 (295 Or 840)
See 298 Or 104, 690 P2d 475 (1984)

## CITY OF PORTLAND,
*Petitioner,*

*v.*

## BUREAU OF LABOR AND INDUSTRIES et al,
*Respondents.*

(29-78; CA A21748)

668 P2d 433

Charles J. Merten, and Richard S. Yugler, Portland, for respondent Phyllis J. Potter's petition.

Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, William F. Gary, Solicitor General,

and Michael D. Reynolds, Assistant Attorney General, Salem, for respondent Bureau of Labor and Industries' petition.

VAN HOOMISSEN, J.

Newman, J., concurring in part; dissenting in part.

## VAN HOOMISSEN, J.

In our earlier opinion, we reversed a finding by the Commissioner that petitioner had committed an unlawful employment practice under ORS 659.030(1) (1975) by discriminating against claimant because of her sex. We upheld the Commissioner's finding that petitioner had unlawfully retaliated against claimant because of her complaints of discrimination. ORS 659.030(4) (1975). We therefore reversed the Commissioner's award of back pay; however, we remanded a damage award of $15,000 for emotional distress, which at one point in the Commissioner's findings was tied only to petitioner's "unlawful employment practices," because we were unable to determine if that award was compensation for claimant's discrimination claim, which we reversed, or for her retaliation claim, which we upheld.

In their petitions for reconsideration, claimant and the Commissioner cite other portions of the Commissioner's findings which clearly state that claimant's mental suffering resulted only from petitioner's unlawful retaliation and not from any pay disparity, and that the $15,000 award was intended to compensate claimant for damages she suffered because of the retaliation alone.

Reconsideration granted; modified to affirm the $15,000 damage award for retaliation; affirmed as modified.

**NEWMAN, J.,** concurring part; dissenting in part.

I concur with the majority's original affirmance of the retaliation claim and its present affirmance of the damage award for mental suffering because of the retaliation claim. We should, however, also affirm the Commissioner's finding that petitioner committed an unlawful employment practice under ORS 659.030(1) by discriminating against claimant because of sex and reinstate the back pay award. Accordingly, I dissent from that portion of the majority's opinion which reverses the back pay award.

The majority opinion reverses the Commissioner's finding of sex discrimination, ruling that a disparate wage between sexes for substantially equal work is not substantial evidence of discrimination in compensation because of sex and that claimant has the burden to disprove the City's "merit system" defense. The majority's analysis is wrong.

After making detailed findings of fact, the Commissioner found:

"No significant distinction was made between the actual duties and responsibilities of Complainant, William Arata and Bernard Schuette. In conclusion, Complainant, William Arata and Bernard Schuette did substantially equal work, the performance of which required substantially equal skills, efforts, and responsibilities under similar working conditions.

"* * * * *

"3) During her employment as East Precinct desk person, Complainant was classified as a Police Records Clerk II and compensated according to the pay scale for that classification. During their employment as East Precinct desk persons, William Arata and Bernard Schuette were classified as police officers and compensated according to the pay scale for that classification. Complainant was compensated at a lower rate of pay that was paid either William Arata or Bernard Schuette."

This finding of unequal pay for substantially equal work is supported by substantial evidence in the record, and we are bound by it. ORS 183.482(8). The original majority opinion does not dispute the finding, but states:

"* * * We disagree that that alone amounts to discrimination in employment 'because of sex.' " *City of Portland v. Bureau of Labor and Ind.,* 61 Or App 182, 189, 656 P2d 353 (1982).

The majority opinion cites no authority for its erroneous conclusion.

Claimant correctly argues that the Commissioner's finding that she received unequal pay for substantially equal work establishes a *prima facie* case of illegal discrimination under ORS 659.030(1). She also argues correctly that establishment of a *prima facie* case shifted the burden to the City to come forward with proof that the pay differential was based on some factor other than sex.

The federal counterparts to ORS 659.030 and ORS 652.220 are Title VII and the Equal Pay Act, respectively. Because Oregon's civil rights laws are patterned on federal law, federal precedent is helpful to identify discriminatory employment practices. *U. of O. Co-Oper. v. Dept. of Rev.,* 273 Or 539, 542 P2d 900 (1975). When an equal pay claim arises under

either or both Title VII and the federal Equal Pay Act, the federal courts have held that these statutes should be read together and in harmony. *Gunther v. County of Washington,* 623 F2d 1303 (9th Cir 1979); *aff'd* 452 US 161, 101 S Ct 2242, 68 L Ed 2d 751 (1981); *DiSalvo v. Chamber of Commerce, etc.,* 568 F2d 593 (8th Cir 1978). Federal courts have looked to decisions interpreting the Equal Pay Act for guidance in examining pay discrimination claims asserted under Title VII. *Gunther v. County of Washington, supra; Hays v. Potlatch Forests, Inc.,* 465 F2d 1081 (8th Cir 1972). If a discrimination claim under Title VII is based on denial of equal pay for equal work, Equal Pay Act standards are applicable. *Gunther v. County of Washington, supra,* 623 F2d at 1318. The applicable standards have been summarized as follows:

> "* * * In a typical wage discrimination case, the plaintiff bears the initial burden to show that: (1) the work of the employees of one sex required the exercise of substantially equal skill, effort, and responsibility and was performed under working conditions similar to that of employees of the opposite sex; and (2) the pay to men and women was unequal. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). The burden then shifts to the employer to show that the unequal pay results from a seniority system, a merit system, a system tying earning to productivity, or any factor other than sex. 42 U.S.C. § 2000e-2(h); *Corning Glass Works,* 417 U.S. at 196, 94 S.Ct. at 2229." *Piva v. Xerox Corp.,* 654 F2d 591, 598-99 (9th Cir 1981).

The Commissioner's finding of unequal pay for substantially equal work establishes a prima facie case of discrimination under ORS 659.030. Although the burden of proof to establish her case by a preponderance of the evidence remained on claimant, when she established a *prima facie* case of discrimination, the City then had the burden to come forward with a sexually neutral explanation for the pay differential. Absent such an explanation, the complainant's *prima facie* case is enough to support the Commissioner's finding.

The concept of shifting burdens of going forward in employment discrimination cases has been recognized. *See School District No. 1 v. Nilsen,* 271 Or 461, 534 P2d 1135 (1975); *Lewis and Clark College v. Bureau of Labor,* 43 Or App 245, 602 P2d 1161 (1979), *rev den* 288 Or 667 (1980) (including the concurring opinion of Richardson, J., 43 Or App at 252);

*Clackamas Co. Fire Protection v. Bureau of Labor,* 50 Or App 337, 624 P2d 141, *rev den* 291 Or 9 (1981).

*See also McDonnell Douglas Corp. v. Green,* 411 US 792, 93 S Ct 1817, 36 L Ed 2d 668 (1973), and later decisions relating to burden and order of proof in discrimination cases under Title VII of the Civil Rights Act of 1964 (42 USC § 2000e *et seq.*)

The City's explanation for the difference in compensation between claimant and Arata and Schuette was "the civil service system based on merit." The Commissioner rejected that explanation and concluded that the City had failed to carry its burden of coming forward with a legitimate non-discriminatory reason for the pay differential. The Commissioner found: (1) the system was not a merit system, because merit had nothing to do with the pay received by individuals in the system; and (2) the system was a sex-segregated classification system in which women occupied virtually all PRC II positions and men occupied virtually all police officer positions. The record contains substantial evidence to support the Commissioner's findings.

The original majority opinion states:

> "The Commissioner argues that the city failed 'to establish that the city's "merit system" was anything other than a pretext for discriminatory pay practices.' The claimant bore the burden of proof on that issue. There is no evidence that the use by the city of a job classification to accomplish its aims was a pretext for job discrimination based on sex." *City of Portland v. Bureau of Labor and Ind., supra,* 61 Or App at 189.

That analysis is wrong. The burden was not on claimant to show that the city's classification system was a pretext for discrimination. Claimant established a *prima facie* case. The burden was on the City to come forward with a legitimate, non-discriminatory justification for the pay disparity which was based on factors other than sex. It failed to do so.

The City's classification system was not a merit system, because *merit* was *not* the determining factor in fixing the rate of compensation paid to employes. The City argues, however, that, its civil service classification system was nonetheless a sexually neutral justification for the pay disparity

between claimant and Arata and Schuette. The City emphasizes the general differences in the requirements of PRC IIs and sworn police officers. The Commissioner addressed this argument:

"[Petitioner's] defense focused upon the potential, or theoretical, responsibilities of the two job classifications involved. This matter does not turn on how the comparators were classified, but on how they were actually utilized. It involves a utilization situation which is becoming increasingly familiar in compensation cases based on gender. The male comparators worked a position which under- or mis-utilized persons of their classification, often because they were near retirement or disabled. The female comparator worked the same position, but it involved work which appears to have been beyond her clerical classification. She was over-utilized for her classification. Although the comparators were compensated according to their respective classifications, they did not work according to those classifications. Their actual work was substantially equal.

"As police officers, Officers Arata and Schuette did have some theoretical responsibilities which Complainant did not have. [Petitioner's] defense herein focused upon those responsibilities which Officers Arata and Schuette were supposed to carry out or be able to carry out because they were police officers. * * * Testimony showed that the theoretical responsibilities which distinguished Complainant from Officers Arata and Schuette were seldom or never exercised. They therefore are not a lawful defense for the disparity in compensation between the comparators, because they do not concern work actually performed. Responsibility concerning firearms provides a pertinent example. [Petitioner's] police officers in general have the responsibility of wearing, maintaining, and being able to use a firearm. They allegedly carry out a peacekeeping responsibility just by their presence with a uniform and weapon. Yet neither Officer Arata or Schuette, nor Complainant, had or exercised any particular responsibilities, as East Precinct desk persons, concerning firearms. If they had had such responsibilities, they certainly would have kept their firearms available, even worn them, rather than keeping them in their lockers in another part of the precinct."

The Commissioner's analysis is correct. Job classifications cannot justify disparate wages between sexes for equal work. Actual job performance requirements control over job classifications or titles. *Shultz v. Wheaton Glass Company,* 421

F2d 259 (3rd Cir), *cert den* 398 US 905 (1970); *Brennan v. Prince William Hospital Corporation,* 503 F2d 282 (4th Cir 1974), *cert den* 420 US 972 (1975). See, too, the following cases in which job classification was rejected as a defense to disparate wage claims brought under Title VII and the federal Equal Pay Act: *Howard v. Ward Cty.,* 418 F Supp 494, 504 (D ND 1976) (female claimant classified office deputy, male comparator "field deputy"); *United States v. City of Milwaukee,* 441 F Supp 1371 (ED Wis 1977) (females classified as "police matrons" and males as "jailers"); *Peltier v. City of Fargo,* 533 F2d 374 (8th Cir 1976) (women classified as "car markers" and the men as "patrolmen"). Whatever general differences existed between the job requirements of PRC II and police officers as a whole, such differences were only theoretical compared with the *particular* job of the East Precinct desk person which claimant and Arata and Schuette performed. In *Peltier* male patrol officers were replaced by female car markers. There was no evidence that men could not be car markers, but all car markers were women. The City of Fargo atempted to justify the pay disparity by arguing that the women were paid less because of their classification and not because of their sex. The court rejected this, stating:

> "We conclude that the extra duties actually performed by the male car markers which were not subsequently performed by the female replacements were very insubstantial. The extra duties performed consumed a minimal amount of time and were essentially incidental to the actually assigned and performed duties of the position. The additional training of the male officers and their alleged additional flexibility, when considered in light of the actual duties performed by both the males and females, does not justify the higher pay received by the males. The fifty percent discrepancy in salary between that received by the male car markers and that received by the female car markers violates the Equal Pay Act. * * *" 533 F2d at 378.

The Commissioner also found that the extra duties of police officers in general were not actually performed by Arata and Schuette. *Actual* duties and *actual* responsibilities control. That the desk officers *could* be called upon to perform other duties did not create a significant variation in the skill, effort and responsibility actually required to perform the job held by claimant and the male desk officers. The evidence shows that claimant was hired to replace a male desk officer and,

regardless of her title, performed the same job he performed as desk officer. These duties were: assisting the public at the counter; answering phone calls; checking out radios and vehicles; filing radio call cards and answering district police car requests. The Commissioner found:

> "* * * There were some differences in the activities which Complainant, Officer Arata and Officer Schuette performed. For the most part, these differences consisted of an activity which was very minor in nature and/or time consumed, an activity performed infrequently, and/or a division of two similar tasks. These different activities were so minor that they constituted an insignificant part of the desk jobs and/or were performed interchangeably by Complainant, Officer Arata or Officer Schuette when the person responsible for them was absent."

The few extra duties to which the City points were:

(a)   The Desk Officers Could Be Called To Render Assistance On The Street.

The Commissioner found that Arata was called out twice during the period at issue; Schuette was called out once.

(b)   The Desk Officer Accepted Evidentiary Property.

The Commissioner found this also was an infrequent duty (Schuette stated he once received a knife used in a crime) but that in any event claimant also received evidentiary property. Furthermore, most property received by the desk person was non-evidentiary.

(c)   The Desk Officer Was Responsible For Building Security When No Other Superior Officer Present.

The Commissioner found that that occurred rarely. When no superior officer was physically present, he kept in contact with the office by radio. The record shows that Arata was left in charge only once or twice in five years.

(d)   The Desk Officer Could Assist An Arresting Officer With Suspect In Custody.

The Commissioner found that there was no evidence of the frequency of this task. Arata testified that he never physically assisted an arresting officer. Furthermore, the Commissioner also found that claimant assisted arresting officers with female prisoners.

(e)   Claimant Typed More.

The Commissioner found that claimant spent a very small amount of time typing, except for a short period before 1973 when a precinct secretary was hired. The record shows that she spent five minutes a day typing assignment sheets and 20 minutes per month typing a court schedule. Arata spent a similar amount of time typing gasoline reports.

The City dropped its argument that the desk officer was responsible for use and maintenance of a firearm. Claimant was also given a firearm. Neither she, Arata or Schuette actually exercised any responsibilities in their jobs about firearms, because they all kept their guns in their lockers in another part of the precinct.

The Commissioner also rejected the City's defense, because she inferred that the City's job classification system provided a means to place women into lower-paying jobs. There is substantial evidence in the record to support the basic facts that support this inference, and there is a basis in reason to connect the inference to those facts. The appropriate standard of review regarding inferences is stated in *City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 639 P2d 90 (1981):

> "The substantial evidence rule is not entirely dispositive in reviewing findings which embody inferences. Any inference has two parts: a primary fact plus a deduction. The evidence directly establishes only the truth of the primary fact or facts from which an inference may be derived therefrom. Rational bases may exist for more than one inference to be drawn from the same primary fact, and the factfinder (*i.e.,* the agency) has the task to decide which one to draw. *The court does not substitute its judgment as to which inference should be drawn, but it must review for soundness, not for conformity to judicial preference.* Judicial review of an inference is thus in two stages: (1) whether the basic fact or facts are supported by substantial evidence, and (2) whether there is a basis in reason connecting the inference to the facts from which it is derived. It is a twofold review for substantial evidence and, in a sense, for 'substantial reason.' * * *" (Emphasis supplied.) 292 Or at 271.

Employment discrimination is rarely susceptible to direct proof and frequently depends on inferences drawn by the finder of fact from other evidence. The record shows that

from 1971 to 1973 the City maintained a *de jure* sex-segregated classification system. Until 1973, it was impossible for a woman to become a police officer. The record contains the following findings of fact:

> "Male persons were allowed to apply for appointment to Respondent's PRC-II classification at all times material herein. Female persons were allowed to apply for appointment to Respondent's police officer classification as of 1973.
>
> "In October, 1974, 492 of Respondent's 508 police officers, or 97%, were male. In July, 1975, 480 of Respondent's 497 police officers, or 97%, were male. In July, 1976, 450 of Respondent's 474 police officers, or 95%, were male.
>
> "In July, 1974, one of Respondent's PRC-II's, or 4%, was male. In July, 1975, none of Respondent's PRC-II's were male. In July, 1976, none of Respondent's PRC-II's were male."

There is substantial evidence in the record to support those findings. There is a reasonable basis for the Commissioner's inference that the classification system was a means to funnel women into lower-paying jobs. The Commissioner described it as "two sex-segregated classifications." We should not substitute our judgment for that of the Commissioner.

Petitioner also argues that its decision to replace officers with civilian employes was an economy measure made without intent to discriminate against women. In *Corning Glass Works v. Brennan,* 417 US 188, 94 S Ct 2223, 41 L Ed 2d 1 (1974), the Supreme Court stated that wage differentials between the sexes for equal work

> "* * * reflect[s] a job market in which Corning could pay women less than men for the same work. That the company took advantage of such a situation may be understandable as a matter of economics, but its differential nevertheless became illegal once Congress enacted into law the principle of equal pay for equal work." 417 US at 205.

An effort to reduce costs by replacing higher paid male police officers with lower paid female PRC II clerks is not a sexually neutral rationale for the pay disparity.

The Commissioner did not err in rejecting petitioner's affirmative defenses. Because the City failed to come forward with a legitimate non-discriminatory justification for the pay disparity, claimant's *prima facie* case was unrebutted. The Commissioner's finding of employment discrimination

because of sex is supported by substantial evidence in the record, and the Commissioner's award of back pay should have been affirmed.

Joseph, C. J, and Warden, J., join in this concurring and dissenting opinion.