On appellant's petition for reconsideration filed August 16, 1989, petition for reconsideration allowed, former decision (96 Or App 547, 773 P2d 28) withdrawn; reversed and remanded with instructions to enter judgment for plaintiff for $24,750, plus interest from date of original judgment and for further proceedings March 14, appeal dismissed by stipulation June 19, 1990

SEITZ,
*Appellant,*

*v.*

STATE OF OREGON,
by and through the
ALBINA HUMAN RESOURCES CENTER and the
DEPARTMENT OF HUMAN RESOURCES,
*Respondent.*

(A8411-06886; CA A44440)

788 P2d 1004

Glenn M. Feest, Beaverton, for petition.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Buttler, P. J., dissenting.

**WARREN, J.**

Plaintiff petitions for review of our decision affirming the judgment without opinion. 96 Or App 547, 773 P2d 28 (1989). We treat the petition as one for reconsideration, ORAP 9.15, and allow it in the light of *Sheets v. Knight,* 308 Or 220, 779 P2d 1000 (1989), which held that Oregon recognizes the concept of "constructive discharge."

Plaintiff argues that the trial court used the wrong standard of causation in holding that she was not constructively discharged from employment. Defendant argues that plaintiff has no statutory cause of action under ORS chapter 659, because the Workers' Compensation Law provides her exclusive remedy. Defendant also argues that, if we reverse, it is entitled to a setoff equal to the amount paid on plaintiff's workers' compensation claim.

Plaintiff began her employment with the Albina Human Resources Center (Center) of the Department of Human Resources (DHR) in May, 1980, as an office supervisor. Her supervisor was the Center manager, Winchester, and she worked for the assistant manager, Maher. Her performance was reviewed by Winchester in November, 1980, 1981 and 1982, with a rating of satisfactory or better.[1] She disagreed with her November, 1982, performance rating and requested a review. There was evidence of some interpersonal conflict in December, 1982, between plaintiff and some coworkers and, also, of plaintiff's disagreement with certain management decisions during that time.

On December 29, 1982, plaintiff filed a complaint, alleging race and sex discrimination by Winchester and unresponsiveness by management to her complaints of being harassed by other workers. The Civil Rights Division of the Bureau of Labor & Industries (BOLI) later ruled that her complaint was unfounded.[2]

On January 28, 1983, Maher requested by memo that

---

[1] In each review plaintiff was rated a "2." The rating system changed after the 1980 review, before which a "2" meant above average and after which a "2" meant average.

[2] In a Notice Of Determination on December 28, 1983, the Civil Rights Division found no substantial evidence of unlawful employment practices.

Winchester transfer or terminate plaintiff. The memo described plaintiff's work as error prone, showing poor judgment and progressively worsening. He described her attitude after December 1, 1982, as belligerent, noncooperative and progressively disruptive. On the same date, Winchester wrote a memorandum to Bieberle, supervisor of the Center, requesting that plaintiff be removed from the Center. His memo included reference to her complaint:

> "My further justification for [her] removal at this time, is the fact of pendency of her Civil Rights Complaint. The ramifications of this matter preclude any reasonable expectation or prospect that a compatible work environment can be maintained."

As a result of Winchester's memorandum, plaintiff was suspended from work for two weeks, effective February 1, 1983. She appealed the suspension to the Employment Relations Board (ERB). Defendant changed the suspension to administrative leave with pay as the result of a negotiated settlement of plaintiff's grievance. Instead of returning to the Center, plaintiff was temporarily transferred, at her request, to the Adult and Family Services Division. On about May 25, 1983, she was notified that she would have to return to the Center as of July 1, 1983.

On June 23, 1983, plaintiff filed a workers' compensation claim for stress from her job experiences at the Center. As a result of the claim, SAIF requested a report from plaintiff's doctor and an independent psychiatric examination. Her doctor stated that she had a history of high blood pressure, which had been under control as of May, 1982, but which had reached unacceptable levels during 1983 because of stress from job-related interpersonal conflicts. He recommended that she not work at the Center again. The psychiatrist concluded that plaintiff had pre-existing emotional and physical problems that were aggravated by work stress.

Plaintiff returned to the Center on July 5, 1983, with Maher as her direct supervisor. She agreed to a new position description and work plan developed by Maher, which removed her from management decisionmaking, except for supervision over the receptionist. She had other clerical duties, including maintenance of personnel files, which she testified were moved to Winchester's office and kept under

lock and key. She also testified that she was constantly watched, that daily records of her activities were kept and that she did not receive the help that she needed.

On July 7, two days after returning to work, she filed a second complaint with BOLI, alleging retaliation for making the first claim and citing her suspension and differential treatment before and after her return to the Center. On July 6, 1984, BOLI held that there was substantial evidence that the suspension was retaliatory. BOLI found that daily records were kept of her activities, but not those of other employees, but it found the evidence inconclusive about whether the changes in plaintiff's duties and treatment were retaliatory or an effort to mitigate her job stresses.

There was extensive evidence of plaintiff's increased conflicts with management and her co-workers after her return to the Center. Maher gave plaintiff a written warning, dated September 26, 1983, stating that her work had been unsatisfactory since her return. The warning listed performance deficiencies, including a failure to complete assignments in an adequate and timely manner, a reluctance to respond to constructive criticism, unauthorized managerial actions and disruptive behavior. On November 17, plaintiff received an unsatisfactory performance evaluation and a copy of a letter from Maher to Green, Assistant Director of DHR, recommending a salary decrease for thirty days, to be followed by dismissal if there were "further episodes of similar infractions." Shortly after receiving the evaluation, plaintiff became ill and left work. While she was off work due to the illness, she received a letter from Green, dated November 21, 1983, confirming that her salary would be decreased for thirty days due to inefficiency, stating that her performance would be reviewed by Maher after thirty days and warning that further episodes of infractions would result in dismissal.

On November 24, plaintiff's doctor recommended that she take two weeks off because of stress. Plaintiff requested a hearing before ERB on the ground that the pay reduction was not in good faith but in retaliation for her discrimination complaints. In early December, defendant granted her further medical leave. On December 16, while plaintiff was on leave, Winchester wrote to Green stating that plaintiff's work record and attitude had not improved since

the disciplinary action and recommending her termination. Green instead notified plaintiff that her salary reduction would continue until she had worked for 30 days, so that her performance could be re-evaluated.

In late January, 1984, plaintiff's personal physician informed Green that she could not return to work at the Center. Green informed her that she would be on leave without pay until a vacancy should occur in another part of the agency, and plaintiff applied for unemployment benefits. After notice of that application, DHR sent plaintiff a letter accepting her resignation and rescinding the pay reduction. ERB dismissed the appeal of her salary reduction.

In March, 1984, unemployment benefits were awarded. In November, 1984, plaintiff filed this action under ORS 659.121, alleging an unlawful employment practice in violation of ORS 659.030(1)(f). She alleged that, in retaliation for filing her first discrimination complaint on December 29, 1982, she was suspended in February and received discriminatory differential treatment. She also alleged that, in retaliation for filing her July 7, 1983, discrimination complaint, she was reprimanded, given an unsatisfactory evaluation, had her salary temporarily reduced and was constructively discharged.

During the trial, Maher, in response to questions about the September, 1983, reprimand, said that plaintiff had an erroneous belief that she was the receptionist's supervisor, even though her work plan did say that she was to supervise the receptionist. In addition, Maher stated that, when he found plaintiff deficient for not completing her assignments according to the time lines in her work plan, he did not consider her extensive excused medical absences relevant to that determination.

After a trial to the court, the judge entered a final judgment dismissing the case and wrote a memorandum opinion, finding no evidence of race or sex discrimination, but finding evidence of retaliation:

> "The plaintiff has established, by a preponderance of the evidence, that evaluations of and directives toward plaintiff were made by her superiors, in response to her having filed two discrimination complaints against them."

The opinion concluded that plaintiff had not proved by a

preponderance of the evidence that the retaliation had caused the physical and emotional problems that led to her inability to continue employment at the Center:

> "The evidence is, at best, evenly balanced as to the cause of plaintiff's physical and emotional problems. She 'got her back up' and set out to antagonize and rebuff her co-workers' overtures toward her; their resentment of her attitude and actions appears, however, not to be a factor to be considered in weighing the legitimacy of disparate treatment, and has not been so. The plaintiff has not carried the burden of proving that her ailments were caused by the employer's response to her filing of complaints, and not her own attitude and actions."

In addition, the opinion stated that, even if plaintiff had established a causal relationship between the retaliation and the alleged injuries, defendant was entitled to a setoff for the $15,896.21 in workers' compensation benefits that it had paid. The parties then stipulated that plaintiff's lost wages and benefits totaled $24,750.

The issue is whether defendant violated ORS 659.030(1)(f) and constructively discharged plaintiff in retaliation for her filing the complaints.

We must first determine the scope of review. If the action was brought for equitable relief, then we review *de novo.* ORS 19.125(3). Plaintiff brought the action under ORS 659.121(1), which provides, in pertinent part:

> "Any person claiming to be aggrieved by an unlawful employment practice prohibited by * * * ORS 659.030 * * * may file a civil suit in circuit court for injunctive relief and the court may order such other equitable relief as may be appropriate, including but not limited to reinstatement or the hiring of employees with or without back pay."

Plaintiff requested back pay without requesting reinstatement or any injunctive relief. We have previously held that a claim for back pay only under ORS 659.121(1) is reviewable *de novo. Cook v. Coos-Curry Electric Cooperative, Inc.,* 86 Or App 600, 603, 740 P2d 201 (1987).

ORS 659.121 was amended in 1977 in order to create statutory causes of action for certain types of discrimination. ORS 659.121(1) provides relief from unlawful employment practices. In *Holien v. Sears, Roebuck and Co.,* 298 Or 76, 95,

689 P2d 1292 (1984), the Supreme Court examined the legislative history of the 1977 amendments and recognized that ORS 659.121(1) created the right of an employee to seek purely equitable relief from discriminatory employment practices in a trial to the court. The court pointed out that general damages were still provided through administrative remedies. The statute lists reinstatement, with or without back pay, and injunctions as types of equitable relief provided by ORS 659.121(1), and the court, in *Holien v. Sears, Roebuck and Co.,* *supra,* distinguished those types of relief from general damages that are not covered by the section, including "such personal injuries as anguish, physical symptoms of stress, a sense of degradation, and the cost of psychiatric care." 298 Or at 97.

There was a specific reference to back pay during the legislative hearings on the 1977 amendments:

"[Bill Canessa, Oregon Assistant Attorney General]: [We have set up a remedy] * * * for unfair employment practices for discrimination in employment, which is a straight equitable remedy, no compensatory damages, no punitive damages. This is consistent with Title VII. You're not allowed either punitive damages or compensatory damages under Title VII.

"[Representative Rogers]: Which are compensatory damages?

"[Canessa]: General damages. Mental stress.

"[Rogers]: Okay. And then punitive damages?

"[Canessa]: Punitive damages is a penalty.

"[Rogers]: Penalty. We're not talking about lost pay or anything like that [unintelligible].

"[Canessa]: No, that's correct.

"[Rogers]: Okay.

"[Canessa]: Equitable is how much pay you've lost, or you should be hired, front pay. All the different equitable remedies you might have." House Labor Committee, Work Session on HB 2223, April 9, 1977, Tape 14, Side 1.

■ The description of back pay as part of equitable relief also fits with the federal courts' interpretation of Title VII of

the Civil Rights Act of 1964, 42 USC § 2000e *et seq* (1985), on which Oregon employment discrimination laws are based.[3]

"It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination.

"\* \* \* \* \*

"The 'make whole' purpose of Title VII is made evident by the legislative history. The backpay provision was expressly modeled on the backpay provision of the National Labor Relations Act. Under that Act, '[m]aking the workers whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces.'" *Albermarle Paper Co. v. Moody,* 422 US 405, 418-19, 95 S Ct 2362, 45 L Ed 2d 280 (1975). (Footnotes omitted.)

A claim for back pay under ORS 659.121(1) is also a claim for equitable relief because of the relationship between back pay and reinstatement. ORS 659.121(1) describes back pay as relief that is ancillary to reinstatement. A plaintiff does not have to seek all the relief to which she is entitled in order to state a claim under ORS 659.121(1). *Davis v. Surcamp,* 86 Or App 310, 314, 738 P2d 1006 (1987).

A claim of an unlawful employment practice that is brought under ORS 659.121(1) would necessarily allege facts that would provide for some kind of injunctive relief, such as reinstatement or promotion, in order to state a claim that would allow an award of back pay. Such is the case in this action, in which the complaint alleges an illegal discharge, which, if proved, would provide the right to reinstatement. In cases of employment discrimination, the level of tension and bad feeling in the workplace might prevent the employee from requesting reinstatement. In other cases, the employee might ask only for back pay, because he has already been reinstated but argues that there was a discriminatory delay in reinstatement. *See Cook v. Coos-Curry Electric Cooperative, Inc., supra,* 86 Or App at 603. A request for back pay under ORS 659.121(1), therefore, presumes a claim of entitlement to injunctive relief and is an equitable claim.

---

[3] *City of Portland v. Bureau of Labor and Ind.,* 64 Or App 341, 344, 668 P2d 433 (1982), *aff'd in part, rev'd in part* 298 Or 104 (1984).

We, therefore, review *de novo*. However, because the trial court had the opportunity to see and hear the witnesses as they testified, we will give considerable weight to that court's findings when the testimony, or the inferences to be drawn from it, are in dispute. *Hampton v. Sabin,* 49 Or App 1041, 1047, 621 P2d 1202 (1980), *rev den* 290 Or 519 (1981).

■     Preliminarily, we address defendant's argument that plaintiff may not bring her retaliation claim under ORS 659.121, because the Workers' Compensation Law provides her only remedy. We answered the same question in *Palmer v. Bi-Mart Company,* 92 Or App 470, 758 P2d 888 (1988), where the defendant argued that ORS 656.018 provided the exclusive remedy for a sex discrimination claim under ORS 659.121. We pointed out that the statutory right to be free from sexual discrimination in the workplace provided by ORS chapter 659 is unrelated to any claim of personal injury suffered in the workplace, which is compensable under ORS chapter 656. Therefore, the exclusivity provision of ORS 656.018 does not apply to injuries compensable under ORS chapter 659. 92 Or App at 475.

■     Plaintiff alleges that defendant constructively discharged her in violation of ORS 659.030(1)(f), which provides that it is an unlawful employment practice

"[f]or any employer to discharge, expel or otherwise discriminate against any person because * * * the person has filed a complaint, testified or assisted in any proceeding under ORS 659.010 to 659.110 and 659.400 to 659.435 or has attempted to do so."

The recent Supreme Court case, *Bratcher v. Sky Chefs, Inc.,* 308 Or 501, 784 P2d 4 (1989), adopted a standard for establishing a constructive discharge stemming from unacceptable working conditions:

"[A] plaintiff must prove (1) that the employer deliberately created or deliberately maintained the working condition(s) (2) with the intention of forcing the employee to leave the employment, and (3) that the employee left the employment because of the working conditions." 308 Or at 506.

In the context of an allegation of constructive discharge in a claim for a violation of ORS 659.030(1)(f), plaintiff must prove that defendant (1) deliberately retaliated, because she filed the discrimination complaints, (2) with the intent of

forcing her to leave employment and (3) that she left employment because of the retaliation.

■■  We use the "substantial factor" test[4] to determine whether plaintiff's protected activities were the cause of defendant's adverse actions. She alleges that her suspension in February, 1983, and her treatment before and after the suspension were in retaliation for her filing the first complaint. Both BOLI and the trial court found the suspension to be retaliatory. Because plaintiff's performance evaluations through November, 1982, show that her performance was satisfactory and give no indication that she would be subject to discipline, and because Maher's January 28 memo referred to her December complaint as one basis for the need to remove her, we find that the first complaint was a substantial factor in the Center's act of suspending plaintiff.

■  Plaintiff also alleges that the September 26 warning, the November 17 unsatisfactory performance evaluation and the reduction in pay were not given in good faith and were in retaliation for her complaints. The September 26 warning referred to plaintiff's inability to perform effectively under the work plan of July 5, 1983. The November 17 evaluation temporarily reduced her pay due to "inefficiency." The trial court did not believe defendant's explanation of unsatisfactory work by plaintiff and found that the adverse actions were in response to plaintiff's complaints. We give considerable weight to that finding. In addition, we note some inconsistencies in defendant's evidence. Maher testified that plaintiff was not authorized to supervise the receptionist, but the work plan calls for that supervision. Maher also expected plaintiff to meet the July 5 time lines without his having considered the effect of her excused absences. Winchester's December recommendation that plaintiff be dismissed for lack of improvement in her work, when she had not had the opportunity to return to work, strongly suggests that the quality of work was not the reason for the adverse actions. Although there is evidence that plaintiff had become increasingly difficult to work with,[5] we find that retaliation was a substantial factor in the September

---

[4] *See Holien v. Sears, Roebuck and Co., supra,* 298 Or at 90 n 5.

[5] Deterioration in job performance may be caused by discrimination against an employee. *See Fred Meyer v. Bureau of Labor,* 39 Or App 253, 258, 592 P2d 564, *rev den* 287 Or 129 (1979).

26 warning, the November 17 evaluation and the reduction in pay.

■ The next question is whether defendant took the retaliatory actions with the intention of forcing plaintiff to leave her job. Maher requested on January 28, 1983, that Winchester terminate plaintiff and, on the same date, Winchester requested that plaintiff be removed from the Center. The resulting suspension had the effect of removing her temporarily to a different work site. After the November, 1983, reduction in pay, Winchester expressed the clear intent in his letter of December 16 that plaintiff be terminated. We find that defendant intended to terminate plaintiff and that the evidence permits an inference that defendant retaliated in furtherance of that purpose.

■ The last question is whether plaintiff left her employment because of the employer's retaliatory acts. On this issue we differ with the trial court's finding that plaintiff's own attitude and actions, not the retaliation, caused her physical and emotional ailments and her departure. Although plaintiff has a history of high blood pressure, the problem was under control in 1982, but her blood pressure was again elevated in 1983, after her February, 1983, suspension. Her physician and an independant psychiatrist agree that her health problems were aggravated by work related stress. After she received the November 17 evaluation, with a recommended salary decrease and a warning of future dismissal, plaintiff became ill and left work. Her doctor first recommended two weeks off because of stress and later notified the Center that her health would not permit her return to the Center. No other position outside the Center was made available to her.

We find that defendant's adverse actions were a substantial factor in the deterioration of plaintiff's health and that she left the employment because of defendant's retaliation. We hold that plaintiff was constructively discharged in violation of ORS 659.030(1)(f).

■ Plaintiff and defendant stipulated that plaintiff's lost wages and benefits were $24,750. Defendant argues that it is entitled to a setoff equal to $15,896.21, the amount paid by SAIF in settlement of plaintiff's June 23, 1983, worker's compensation claim. Plaintiff argues that a disputed claim settlement may not be set off in these circumstances and that, in

any event, defendant presented no evidence about the claim or about how much of the settlement, if any, was intended as compensation for lost wages. Even assuming, without deciding, that a setoff would be proper against a compensation settlement that was intended to replace lost wages, no evidence of the settlement and its purpose was presented at trial.

Petition for reconsideration allowed; former decision withdrawn; reversed and remanded with instructions to enter judgment for plaintiff for $24,750, plus interest from the date of the original judgment and for further proceedings not inconsistent with this opinion.

**BUTTLER, P. J.,** dissenting.

Because I do not agree that we review *de novo* in this action for money damages only and because there is evidence to support the trial court's judgment, I dissent.

The majority recognizes, appropriately, that there is a substantial question concerning our scope of review in this discrimination case brought under ORS 659.121(1). The *only* case in which that question was analyzed is *Wincer v. Ind. Paper Stock Co.,* 48 Or App 859, 618 P2d 15 (1980). In that case, the plaintiff was denied reemployment after he was released for work following his recovery from an injury compensable under the Workers' Compensation Law. He then filed an action seeking to restrain the employer from continuing that unlawful practice, ORS 659.030, for reinstatement with back pay and attorney fees. ORS 659.121(1); ORS 659.415. He demanded, but was denied, a jury trial. On the merits, the trial court found that the defendant had not violated ORS 659.415.

On appeal, he assigned error to the trial court's denying him a jury trial. In rejecting his contention, we pointed out that Article I, section 17, of the Oregon Constitution merely preserves that right in classes of actions in which a jury trial was available when the constitution was adopted. We concluded:

> "Historically injunctions and reinstatement of contracts were a matter tried in equity. Back wages due under an employment contract followed as a matter of course upon equitable reinstatement of the contract. Plaintiff seeks an injunction and reinstatement of his employment contract

with the attendant back wages. These remedies were the type sought in equity at the time the constitution was adopted." 48 Or App at 863. (Footnote omitted.)

Because the plaintiff in *Wincer* clearly was seeking what has historically been considered equitable relief, we also held that our review was *de novo. Wincer* was decided correctly.

In *Cook v. Coos-Curry Electric Cooperative, Inc.,* 86 Or App 600, 740 P2d 201 (1987), the plaintiff had been reinstated, albeit belatedly, to his former position following his recovery from a compensable injury. He then brought an action for back pay. Without any analysis of the question, we stated simply that our review was *de novo,* citing *Wincer.* We did not say that an action seeking back pay was equitable in nature. In *Davis v. Surcamp,* 86 Or App 310, 738 P2d 1006 (1987), the question was whether the trial court had erred in dismissing the plaintiff's case, after trial, for failure to state a claim under ORS 659.121(1). The plaintiff alleged that the defendant had refused to reinstate him after his recovery from a compensable injury and that he had been unable to find other employment until a specified date. He sought only lost wages, without reinstatement. We held that, because the facts alleged would have entitled the plaintiff to reinstatement, his complaint stated a claim under ORS 656.121(1). In the final sentence, we stated that we declined the plaintiff's request to review *de novo,* "because we do not have the benefit of trial court findings." 86 Or App at 314. Because the absence of trial court findings does not preclude *de novo* review of the record, we must have meant that we would not review the merits of the plaintiff's claim until the trial court had ruled, which the trial court had not done, given its dismissal under ORCP 21.

The majority seems to say that *Holien v. Sears, Roebuck and Co.,* 298 Or 76, 689 P2d 1292 (1984), supports the proposition that awarding back pay is a type of equitable relief provided by ORS 659.121(1). 100 Or App at 672. That is not correct. In stating that the statute provided for equitable remedies, the court simply quoted the language of the statute, "such other equitable relief as may be appropriate, including but not limited to reinstatement * * * *with or without* back pay." 298 Or at 95. (Emphasis supplied.) Clearly, reinstatement with or without back pay is an equitable remedy.

In my opinion, *Wincer* is the only viable precedent for

determining whether a proceeding under ORS 659.121(1) is equitable in nature, requiring *de novo* review on appeal. I do not share the majority's concern that, unless we hold that an action for back wages is equitable in nature, plaintiff has no remedy for the alleged unlawful employment practice. It makes no sense to say that one may recover back wages only if she also seeks reinstatement or an injunction. The legislature clearly intended by subsection (1) to provide a remedy to one in plaintiff's position, including back pay, and, because it makes no sense to require a plaintiff to seek an injunction or reinstatement in order to get back pay, the legislature could not have intended that result. It is difficult to imagine a case in which a plaintiff who is entitled to wages that are lost as a result of an unlawful employment practice, ORS 659.030, would not also be entitled to reinstatement, even though that relief is not sought. That is the substance of our opinion in *Cook v. Coos-Curry Electric Cooperative, Inc., supra.* However, in that kind of case, the remedy is not one that has been considered historically as equitable in nature; therefore, we do not review *de novo.* ORS 19.125(3).

Plaintiff contends that defendant discriminated against her because she filed two complaints with BOLI, the first alleging that defendant had discriminated against her because of her race, and the second alleging that defendant had discriminated against her for having filed the first complaint. As a result of the disparate treatment that she received following the dismissal of those two complaints, she claims that she became so distraught that she left her employment.

Although the majority applies the requirements for proof of a constructive discharge adopted recently in *Bratcher v. Sky Chiefs, Inc.,* 308 Or 501, 783 P2d 4 (1989), it does so by a *de novo* review of the record. Because I conclude that we do not review *de novo,* the only question is whether there is evidence to support the trial court's finding on the only issue on which the majority disagrees with the trial court: whether plaintiff left the employment because of the working conditions. The trial court found that plaintiff had failed to prove that her physical and emotional problems, which she alleged caused her to leave her employment, were caused by defendant's response to her filing the complaints, rather than by her pre-existing physical and emotional problems and her own actions on the job. There is evidence to support that finding, and we

may not disturb it, even though we might evaluate the evidence differently.

Accordingly, I would deny the petition for reconsideration. Therefore, I dissent.