64 F.3d 666
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Margaret MITCHELL, Plaintiff-Appellant,
v.
MID-WILLAMETTE VALLEY SENIOR SERVICES AGENCY; Patrice
Peterson, Individual and official capacity,
Defendants-Appellees.
 No. 93-35721.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 3, 1995.
Decided Aug. 22, 1995.
 
 Before: BROWNING, REAVLEY,* and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Margaret Mitchell brought suit against the Mid-Willamette Valley Senior Services Agency and Patrice Peterson (jointly referred to as "MWVSSA"), alleging that MWVSSA constructively discharged her in retaliation for her exercise of free speech, in violation of 42 U.S.C. Sec. 1983, and for her reports of nursing home violations, in violation of Oregon's whistleblower statute, Or.Rev.Stat. Secs. 659.035, 659.505. The district court granted summary judgment in favor of MWVSSA, and we affirm.
 
 BACKGROUND
 
 3
 In June 1989, Mitchell was hired by MWVSSA as a protective services investigator. Mitchell's job duties required her to conduct investigations in nursing home elderly abuse cases. Her reports were forwarded to an Oregon state agency, which determined whether civil sanctions would be imposed against facilities where abuses were found.
 
 
 4
 In September 1989 and October 1990, Mitchell received very favorable performance reviews from her supervisor, Donna Rosen. In October of 1990, Rosen left MWVSSA and Patrice Petersen began to supervise Mitchell. Petersen soon told Mitchell to follow a social work approach to abuse investigations rather than the more adversarial legal model Mitchell had previously used.
 
 
 5
 In the spring of 1991, Maurice Reese complained to Petersen and Randy Poppen, the Assistant Executive Director at MWVSSA, that Mitchell was intimidating to the staff during an investigation at Marian Retirement Center ("Marian"). Reese was the owner/operator of Marian. Petersen and Poppen learned that other nursing home owners and administrators had similar complaints.
 
 
 6
 Mitchell told Petersen in May of 1991 that she had spoken with a congressional aide about her concerns that federal funds were provided to the state for protective services but that the protective services unit at MWVSSA did not receive the funding necessary to handle its caseload. She had asked the aide if federal law mandated certain uses for the funds. At about the same time, Petersen learned that Mitchell had referred numerous complaints, often without sufficient supporting evidence, to the Board of Medical Examiners (the "BME") regarding care provided by certain physicians to the elderly. A BME investigator had suggested that Mitchell begin referring only complaints reviewed by a doctor.
 
 
 7
 In June 1991, Mitchell received her first negative performance evaluation. In July 1991, MWVSSA transferred Mitchell to a new position entitled "health educational specialist." Mitchell's new position did not use her nursing or gerontology background. Mitchell worked in that position from July 1991 until her resignation in March of 1992.
 
 DISCUSSION
 
 8
 Assuming that Mitchell has sufficiently shown that she was constructively discharged from MWVSSA, summary judgment is still proper, because she has failed to provide evidence that MWVSSA discharged her in retaliation for her exercise of her free speech rights or because of her reporting of nursing home violations. Mitchell has failed to create a genuine issue of fact on the issue of causation. See Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986).
 
 A. Section 1983/First Amendment Claim
 
 9
 To support a section 1983 claim of retaliation for exercise of her free speech rights, Mitchell must show that her exercise of free speech was a "substantial factor" in MWVSSA's decision to constructively discharge her. Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 97 S.Ct. 568, 576 (1977).
 
 
 10
 Mitchell has failed to provide any evidence that MWVSSA discharged her because she engaged in First Amendment speech. In Schwartzman v. Valenzuela, this court held that an issue of fact on causation existed where the plaintiff received no criticism from his employer until after he made public comments against the employer and the employer knew of the comments. 846 F.2d 1209, 1212 (9th Cir.1988). Mitchell did receive her first negative evaluation and was transferred soon after she informed Petersen that she had spoken with a congressional aide about funding problems at the protective services division of MWVSSA. However, unlike the scenario in Schwartzman, Mitchell received criticism before Petersen learned that she had spoken to the aide. Petersen had previously spoken with Mitchell about problems with her investigatory style and had sent her a memo directing a change in approach and asking that Mitchell no longer take taped depositions. Also, in Schwartzman, the plaintiff presented documentary materials containing strong circumstantial evidence that he was discharged in retaliation for his speech in addition to the inference from the timing of his discharge. Id. Mitchell presented no such evidence.
 
 B. Oregon State Law Claim
 
 11
 To succeed on her state law claim, Mitchell again must prove that her protected activity of reporting retirement home abuses was a "substantial factor" in MWVSSA's decision to act against her. Seitz v. State, 788 P.2d 1004, 1010 (Or.Ct.App.1990). Mitchell has not proffered sufficient facts to create a genuine issue of fact on causation in relation to her state law claim.
 
 
 12
 As with her federal claim, Mitchell relies on proximity in time as her main evidence that MWVSSA's adverse employment actions were triggered by her protected activity. She cites Seitz and argues that causation should be inferred, because she received her negative evaluation and transfer soon after she submitted her report on the Marian Retirement Center. In Seitz, the Oregon court found that the substantial factor test was met where the employer did not critique the employee until after the employee engaged in protected activity and the employer's own memo referred to the protected activity (the filing of a race and sex discrimination complaint) as a reason for removing her. Id. Mitchell's case is not supported by the same direct documentary evidence available in Seitz.
 
 
 13
 Mitchell claims that causation is proven by the fact that MWVSSA's proferred reasons for transferring her are untruthful. MWVSSA asserts that it transferred Mitchell out of the protective services unit because of her antagonistic investigatory style, her failure to prepare reports at the rate of other employees and her excessive unfounded reporting of complaints about physicians to the BME.
 
 
 14
 Mitchell has not shown that MWVSSA provided false reasons for her transfer. Mitchell provides no evidence that MWVSSA transferred her for a reason other than her investigatory style. Mitchell claims that Petersen's deposition testimony shows that chronic understaffing at the protective services division, before and after Mitchell's employment, caused the backlog of cases. But Petersen's testimony indicates that Mitchell herself did not work at an acceptable speed and was transferred partly for that reason. Mitchell notes that some of her referrals to the BME resulted in findings of violations, that Petersen herself had referred complaints to the BME and that nobody questioned Mitchell's good faith in making the referrals. These facts do not defeat MWVSSA's claim that the transfer decision was prompted because Mitchell made an excessive number of referrals which were often unsupported and unfounded.
 
 
 15
 Mitchell also attempts to provide proof of causation by alleging that Reese had ties to MWVSSA which allowed him to force Mitchell's removal in retaliation for her report of abuses at Marian. Mitchell points out that Reese serves on the legislative committee for Oregon's nursing home owner's association. The executive director of the nursing home owner's association was a retired MWVSSA executive director. However, Mitchell offers no summary judgment evidence indicating that Reese actually had any connection to the administration at MWVSSA sufficient to allow him to force MWVSSA's decision to transfer Mitchell. MWVSSA admits that it transferred Mitchell partly because of complaints by nursing home owners, such as Reese. However, Mitchell provides no evidence showing that MWVSSA transferred Mitchell for her investigations resulting in reports of abuse rather than her investigatory behavior.
 
 C. Attorney's Fees
 
 16
 MWVSSA seeks an award of attorney's fees in its favor. The statute applicable in this case provides for the award of costs and fees to "the prevailing party." Or.Rev.Stat. Sec. 659.121(1). However, an award of fees to a defendant in a case such as this one is justifiable only where the plaintiff's action is "frivolous, unreasonable or without foundation." Payne v. American-Strevell, Inc., 670 P.2d 1065, 1066 (Or.Ct.App.1983). Mitchell's action does not meet this standard.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3